Robert L. MONIA and Patricia A. Monia, Plaintiffs-Appellants,

v.

Andre J. OBERLE, Jr., and Lillian B. Oberle, Defendants-Respondents.

No. 36361.

Missouri Court of Appeals, St. Louis District, Division Four.

Nov. 4, 1975.

Motion for Rehearing or Transfer Denied Dec. 10, 1975.

Application to Transfer Denied Jan. 12, 1976.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., Robert Hickel, Clayton, for plaintiffs-appellants.

Buerkle, Buerkle & Lowes, David G. Beeson, Jackson, for defendants-respondents.

NORWIN D. HOUSER, Special Judge.

Action to remove from the land records of Ste. Genevieve County a recorded contract for the sale of two tracts of land totaling 25 acres. Plaintiffs are Robert and Patricia Monia, who contracted to sell the land. Defendants, the buyers, are Andre J. Oberle, Jr. and his wife Lillian. The Oberles counterclaimed for specific performance of an oral contract relating to two

larger tracts of land. The 25 acres was included in one of those tracts. Tried to the court without a jury, a judgment and decree was rendered in favor of buyers Oberle and against sellers Monia, both on petition and counterclaim. The Monias have appealed.

■ The Oberles move to dismiss the appeal for failure to comply with Rule 81.19 with respect to the time within which a transcript must be ordered. On December 13, 1974 this court, having considered motions pro and con on the question of extension of time and Oberles' motion to dismiss the appeal on this ground, overruled the motion to dismiss and granted Monias' motion for extension of time. These orders were made pursuant to the power granted by Rule 84.08 to suspend or modify the rules in a particular case upon a showing that justice so requires and by Rule 44.01(b) empowering the court to order enlargement of a time period for cause shown. Our order allowed extra time to file the transcript, which was prepared at a cost of $221 and filed. Since then the parties have incurred additional expense for printing briefs. Under all these circumstances we are disposed to determine the case on the merits and now overrule the motion to dismiss the appeal.

■ Oberles' contention that certain points raised in Monias' brief are not properly before this court because not raised in their motion for new trial is disallowed. In this court-tried case no motion for new trial was necessary to preserve any point for appellate review. *Russell v. Russell,* 427 S.W.2d 471 (Mo.1968); *March v. Gerstenschlager,* 436 S.W.2d 6 (Mo.1969). In such a case an appellant may raise on appeal points not mentioned in the motion for new trial. *Timmerman v. Ankrom,* 487 S.W.2d 567, 569 (Mo.1972).

■ First we consider the action of the court in denying the prayer of the petition to remove the contract from the land records. It is the duty of recorders to record instruments of writing concerning lands which are *acknowledged according to law.* § 59.330, RSMo 1969. If intended to affect title to real estate an instrument must be acknowledged before it is entitled to be recorded. Instruments are not entitled to be recorded as to persons who have not acknowledged them. *Heintz v. Moore,* 246 Mo. 226, 231–232, 151 S.W. 449 (1912). An instrument the acknowledgment of which has been forged is not entitled to be recorded. *Finley v. Babb,* 173 Mo. 257, 73 S.W. 180 (1903). Robert L. Monia and Patricia A. Monia, and Andre J. Oberle, Jr. and Lillian B. Oberle signed the contract. It was not acknowledged by the Monias at that time or at any later time. It is conceded that at a time subsequent to the signing Andre J. Oberle, Jr., himself a notary public, prepared and affixed to the contract an acknowledgment in his own handprinting, reciting the appearance of Monias before him and that they executed the instrument as their free act and deed, attached a purported legal description of "70 acres remaining to be shared," and had the contract, acknowledgment and legal description filed of record in the land records of Ste. Genevieve County, all without the knowledge or consent of Monias. This falsification and alteration of the document disentitled it to be recorded and entitled Monias to have it stricken from the records. The court erred in finding against Monias and for Oberles on the petition.

■ Next, we consider the action of the court on the counterclaim. The handwritten contract, which the parties signed on January 29, 1973, provided for sale by Monias to Oberles of two tracts of land, one consisting of 10 acres, with house, barn and outbuildings, for $13,000, the approximate property lines located according to attached aerial plat; the other consisting of fifteen acres, more or less, at $500 per acre, the property lines to be determined by survey. Provision was made for date of possession, insurance, date of closing, and giving a warranty deed.

The last sentence of the contract (which poses the problem in this litigation) follows:

"Additional agreement to be made concerning sharing balance of approximately seventy acres of tract."

Apparently on the theory that the last sentence of the contract above quoted was ambiguous, the circuit court, over the persistent and continuing objections of Monias on the basis of the parol evidence rule, admitted extensive and voluminous evidence of prior negotiations, dealings, discussions, and agreements, not only between Monias and Oberles but also with representatives of the Wipfler estate, with respect to a larger tract within which the 25 acres were included, and another tract called the "big field property." Mr. Oberle was permitted to testify at length concerning his version of the agreement between the parties. Mr. Oberle testified that there was an oral agreement between the parties prior to the execution of the contract of January 29, 1973 under which Monias were to purchase certain lands from the Wipfler estate (the big field property and a separate 115-acre tract); that Monias were to sell the big field property for a profit and use the funds derived from that sale to pay a portion of the purchase price to the Wipfler estate; that Monias would sell Oberles a 10-acre tract and a 15-acre tract out of the 115-acre tract, for $13,000 and $7,500 respectively; that Monias would reserve 15 acres out of the 115-acre tract for themselves; that the balance of the 115-acre tract was to be split equally between Monias and Oberles; that Oberles would pay Monias $500 per acre for the land received by them out of the remaining acreage; that they were to split the proceeds of the crops from the remaining acreage; that Oberles have paid Monias all of the $20,500 purchase price for the 10- and 15-acre tracts; that this sum was paid in three instalments, the first of which in the sum of $19,000 having been paid to enable Monias to consummate the "deal" with the Wipfler estate. The court, crediting Mr. Oberle, found the facts according to his understanding as to the true intent and meaning of the last sentence of the contract; decided the case for Oberles and against Monias on the counterclaim; decreed specific performance based on Mr. Oberle's understanding of what the last sentence of the contract above quoted meant; found that the remaining acreage was agreed to be shared equally; fashioned a decree vesting in Oberles as tenants by the entirety the surface rights only to a tract of 66.08 acres described by metes and bounds according to a survey as shown by plat attached to the decree; fixed the purchase price at $500 per acre; required payments of money as between the parties based on calculations and accountings for interest accrued, interest paid, crop rental, feed grain program payment, fertilizer, taxes, insurance premium, straw baling costs, and seed corn, giving credit for payments made by Oberles; determined that Oberles were entitled to a roadway easement over lands set over to Monias; fixed the location of and rights in the roadway; and annulled a deed of trust given by Monias to the Bank of Bloomsdale.

The judgment and decree on the counterclaim cannot stand. The written contract of January 29, 1973, down to the last sentence, is a complete, single and final memorial of the understanding and intention of the parties and, except for the last sentence, is enforceable. Some other and different contract, based upon oral testimony, cannot be enforced by specific performance on the basis of the last sentence of the contract, which is unambiguous and plain enough in its essential meaning. There is no showing of fraud, duress, mistake or mental incapacity, and therefore the unambiguous contract entered into between these parties cannot be varied and a new and different contract substituted by parol evidence. *Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S.W.2d 817 (1950).

A provision that an "additional agreement" is to be made is clear and unambiguous. It refers to another and different agreement. "The word 'additional' means something that is added to something that is already in existence so as to form an aggregate." *York Pharmacal Co. v. Henry*

*C. Beckmann R. & I. Co.,* 304 S.W.2d 40, 42 (Mo.App.1957). The sentence refers to an additional agreement not yet made, but to be entered into and agreed upon at a future time. It contemplates future action. The sentence clearly implies that on January 29, 1973 there was not already in existence an agreement concerning the sharing of the balance of the acreage of the tract. Only by passing over the first phrase ("Additional agreement to be made") and looking only to the last phrase ("sharing of balance of approximately seventy acres of tract"), could the sentence possibly be construed as an agreement for sharing the balance of the acreage so as to conclude that "sharing the balance" (ambiguous language) could be explained and clarified by parol evidence. The first phrase of the sentence cannot thus be lightly passed over. Considered as a whole and in its entirety the last sentence is not susceptible to the construction for which Oberles contend, namely, that the entire last sentence is ambiguous.

In *P. R. T. Inv. Corp. v. Ranft,* 363 Mo. 522, 252 S.W.2d 315 (1952), a provision was inserted in a contract for the sale of real estate that it was "[s]ubject to purchaser accepting the seller's lease on ground." This provision was held to preclude specific performance of the contract on the basis that it clearly indicated that a further and additional contract (a contract of lease) was contemplated by the parties. The Court said, 252 S.W.2d l.c. 318–319, that the transactions stipulated in the contract of sale "were plainly subject to or conditional upon the purchaser's 'acceptance' of the sellers' lease. To allow this plain language to be verbally explained and varied as urged by appellant would vary or change the express terms of the written contract of sale which the parties had made as the evidence or the memorial of the terms of their agreement as of the time the contract of sale was entered into. \* \* \* The parties to the contract of sale have not agreed—there has been no meeting of the minds—upon the additional terms to be incorporated in the contract of lease which terms were essential in integrating the transactions provided in the contract of sale."

Likewise in the case before us, this contract does not evidence the meeting of the minds with reference to sharing the remaining acreage, but on the contrary clearly indicates that the parties had *not* agreed on that subject. Whatever sharing there was to be was plainly subject to or conditional upon the parties in futuro arriving at an agreement on the subject. The contract related to a 10-acre tract and a 15-acre tract, which were the objects and extent of the engagement. The contract, dated January 29, 1973, complete in itself, did not extend to, or contemplate, any other acreage except for the unenforceable reference to seventy acres in the last sentence.

"The well-established general rule is that where the parties to a contract have deliberately put their engagement in writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties, and the extent and manner of their undertaking, have been reduced to writing, and all parol evidence of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent. Stated otherwise, the intention of the parties as evidenced by the legal import of the language of a valid written contract cannot ordinarily be varied by parol proof of a different intention." 30 Am.Jur.2d Evidence § 1016, pp. 149, 150. "That no one may be heard to say that an actual agreement made by the parties is not reflected in their unambiguous written contract, the courts, by the application of the parol evidence rule, have uniformly held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous contract may not be varied, and a new and different contract substituted by parol evidence. [Citing cases] The agreement of the contracting parties merges in their written instrument and (except in certain instances not appearing here) is

not subject to be varied by oral testimony or extrinsic circumstances. * * * The writing itself becomes and is the single and final memorial of the understanding and intention of the parties." *Commerce Trust Co. v. Watts,* supra, 231 S.W.2d l.c. 820.

■ Since the contract shows clearly that it is complete in itself, "testimony of conversations and prior negotiations leading up to the consummation of the [contract] is not competent to vary the terms of the written instrument. * * * The parol testimony on which [Oberles rely] is not explanatory of the [contract] but is in contradiction thereof, hence such testimony being incompetent cannot form the basis of a judgment against [the Monias] in the face of the clear, unequivocal, and unambiguous terms of the written [contract]." *Sol Abrahams & Son Const. Co. v. Osterholm,* 136 S.W.2d 86, 92 (Mo.App.1940). The contradiction lies in the fact that the oral testimony shows (1) there was an agreement in the past (in 1972) with reference to sharing the balance of the acreage, while the contract states that an additional agreement with reference thereto *is to be made* (in the future), and (2) an agreement radically different from that which the parties reduced to writing and signed.

The circuit court, mistaking an agreement to agree as an agreement in existence, created or constructed a complicated and detailed oral contract for the parties out of the testimony of one of them (disputed by the other in every significant detail), and decreed its specific performance, notwithstanding the new contract thus constructed varied and contradicted the terms of the parties' unambiguous written contract.

■ The circuit court also erred in finding the deed of trust in favor of the Bank of Bloomsdale, placed on the property a day or two prior to June 4, 1974, ineffective as between the parties and that it did not affect the title to the land. The validity of the deed of trust was not an issue under the pleadings in this case. Furthermore, Bank of Bloomsdale was not a party to the action and had no notice or opportunity to be heard on the question of the validity or effect of its deed of trust.

Accordingly, the judgment is reversed and the cause remanded with directions to the circuit court to enter a judgment and decree finding the issues on petition and counterclaim for plaintiffs Monia and against defendants Oberle and directing the recorder to remove the contract and attachments thereto from the public records of Ste. Genevieve County.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.