Richard W. DYGERT, Scott A. Norris
and Gloria Norris, Respondents,

v.

Marjorie CROUCH, Appellant.

No. WD 57879.

Missouri Court of Appeals,
Western District.

Submitted Oct. 4, 2000.

Jan. 23, 2001.

Charles G. Larson, St. Joseph, for Appellant.

Carol C. Barnett, St. Joseph, for Respondent.

Before SMART, P.J., ELLIS and LAURA DENVIR STITH, JJ.

SMART, Judge.

Marjorie Crouch appeals from a judgment of specific performance in a case involving a real estate contract. The trial court ordered specific performance of the contract. The court also awarded $25.00 to Mrs. Crouch on her counterclaim for an improper recording of the contract, and it awarded attorney's fees to the plaintiff-buyers in the amount of $14,400.00.

This case stems from a contract entered into in August of 1998. The Respondents, Richard Dygert and Scott and Gloria Norris ("Buyers") presented a written contract, through a real estate salesperson, to Appellant Marjorie Crouch, for her property consisting of approximately 27 acres of land, which included three dwellings. On August 4, 1998, Buyers submitted a written offer on a document entitled "Contract for Sale of Real Estate." Mrs. Crouch counter-offered the same day on the same document, with slightly different terms holding the offer open until August 5, 1998, at 6 p.m. On August 6, 1998, Buyers accepted the counter-offer including the changes which included a later

closing date of October 30, 1998, and later possession date of November 10, 1998.

At some point during the process of making offers and counter-offers, more than one version of the last page of the contract came into existence. The version that was attached to Buyer's Petition and First Amended Petition had a date of August 8, 1998, next to Mrs. Crouch's signature. The Second Amended Petition, however, had a version attached to it that had a date of August 4, 1998, next to Mrs. Crouch's signature. At trial, Mrs. Crouch stipulated to the version having August 4, 1998 as the contract. Mrs. Crouch also had previously admitted in pleadings that the version with the August 4, 1998, date was the contract in question. The trial court found the effective date of the contract was August 5, 1998.

The Financing Addendum, which was incorporated into the contract, reads as follows:

> C. CONVENTIONAL TERM LOAN: This contract is given subject to the Buyer's ability to obtain a conventional loan in the amount of *80% sales price* payable over a period of not less than *30* years and bearing interest at a rate of not more than *7.25* percent per annum, with not more than *0* loan points to be paid by Buyer. Seller shall not be obligated to pay any of the expenses incidental to the obtaining of such loan. Buyer shall apply for the loan within *5* days after the final acceptance of this Contract or Buyer shall be deemed to have waived this contingency. In the event Buyer is unable to obtain such loan commitment by the *4th* day of *Sept., 1998*, then this Contract shall be null and void and the earnest money *deposit shall be returned to Buyer.*

Buyers contacted several banks soon after the contract was signed to inquire about financing but discovered that because of the acreage and the fact the property contained multiple dwellings, banks were not interested in issuing a residential loan.

On August 13, 1998, Buyers initiated a formal loan application process with Provident Bank. After running a credit check and calculating their income-to-debt ratio, a loan officer informed them they should qualify for the loan. Buyers did not request a written loan commitment. The loan process continued and Buyers were continuing to supply documentation to the Bank at least as late as September 8, 1998.

Mrs. Crouch decided to inquire whether Buyers had obtained financing, because she also had made an offer for a new house. After phone calls on September 4th and 8th, Mrs. Crouch learned that Buyers had no written loan commitment. On September 8, 1998, Mrs. Crouch sent a letter to Buyers' realtor stating in relevant part:

> This is to iinform [sic] you that as of midnight Sept. 4, 1998 contract # 61856/sdr is void and Null because of non financing [sic] and fullfillment [sic] of said contract. I wish to inform you that I want to cancell [sic] complete contract. After several phone calls On [sic] Sept. 4th and Sept. 8th the financing still wasn't completed.

The Realtor received this letter on September 9, 1998.

Buyers responded by writing to Mrs. Crouch that they considered the financing addendum waived and considered the contract to be a cash agreement to be closed on October 30, 1998. The relevant part of the letter reads as follows:

> We would like to clarify our interpretation of Addendum A Financing Agreements, Part C regarding conventional term loan. Line 3 states "Buyer shall apply for the loan within 5 days after final acceptance of this Contract or Buyer shall have deemed to have waived this contingency." We did not apply within the five-day window, therefore, Scott and Gloria Norris and Richard Dygert consider portion of Addendum A to be irrelevant. At this point all other sections of the Contract for Sale are binding and in effect. We consider this con-

tract a cash agreement and intend to close on the date specified, October 30, 1998.

This letter was sent to Mrs. Crouch on September 9, 1998. The Buyer's loan was approved on September 13, 1998. Because Mrs. Crouch was apparently not intending to close the transaction, Buyers filed a declaratory judgment action on October 26, 1998, four days prior to the scheduled closing on October 30, 1998. When Mrs. Crouch failed to appear at the closing, Buyers amended their petition seeking both declaratory relief and specific performance. After a second amendment, Mrs. Crouch filed an answer and counterclaims.

On December 28, 1998, both parties filed Motion for Summary Judgments. At a pretrial hearing on January 26, 1999 the trial court denied the motions for summary judgments. A bench trial was conducted on April 2, 1999 on Buyers' claims. On June 18, 1999, the trial court granted Buyers' motion to dismiss Mrs. Crouch's first counterclaim. A bench trial on the remaining counterclaims was conducted on July 19, 1999. On August 19, 1999, Mrs. Crouch filed her application for attorneys fees which was heard by the trial court on August 31, 1999.

The trial court entered a judgment granting specific performance to Buyers and awarding attorney's fees to Buyers. The court ruled in favor of Mrs. Crouch on Mrs. Crouch's action seeking removal of the copy of the contract from the records of the Buchanan County Recorder of Deeds, and awarded Mrs. Crouch $25.00 in nominal damages. The court denied Mrs. Crouch's claim for slander of title.

## Points I and II

■ Mrs. Crouch's first two points are contentions that the trial court erred in failing to strike the Buyers' motion for summary judgment and in failing to grant summary judgment to Mrs. Crouch on Mrs. Crouch's motion. These rulings are not appealable because they are interlocutory in nature. *Gillespie v. Gillespie,* 634 S.W.2d 493 (Mo.App.1982). Points I and II are denied.

## Point III

■ Mrs. Crouch's point III reads as follows:

The Trial Court erred in failing to enter an order under Rule 74 .04(d), because the Trial Court did not grant Summary Judgment and Rule 74.04(d) requires an order finding what material facts exist without substantial controversy and what material facts are actually and in good faith controverted, in that at that time based on the pleadings and affidavits, the Court would have found the Contract date to be August 8, 1998.

Rule 74.04(d) applies to cases "not fully adjudicated on motion," or, in other words, cases in which partial summary judgments are granted. *See State ex rel. Turner v. Sloan,* 595 S.W.2d 778, 782 (Mo.App.1980). Here both parties asked for adjudication on all issues in the motion for summary judgment and the court denied both motions. Thus, Rule 74.04(d) has no application here. Point III is denied.

## Point IV

Point IV states as follows:

The Trial Court erred in its Judgment Entry and Final Order, because there were insufficient facts to support its conclusion, in that the Court required the Buyers to have made "written application" for a loan when the contract made no such requirement and erred on the date of the contract.

Mrs. Crouch argues that the trial court improperly added a term to the contract requiring Buyers to make "written application." A close examination of the court's decision reveals that this conclusion is incorrect. In its Judgment the trial court wrote:

Further, the Court finds that the additional language in Paragraph C of Addendum A of the Contract concerning the loan commitment requirement does

not require a *written* loan commitment, as Defendant has suggested. There is no indication in the contract that the commitment need be in writing. Further, as Defendant has testified, she was looking for a way to "get out" of the contract, and therefore opted to insist on a *written* loan commitment, even though this was not required under the contract.

While the trial court may have also made a finding that Buyers did not apply for a loan within five days after accepting the contract, thus finding that Buyers waived the financing contingency, the court did not make a finding that loan application must be in writing. The court's comment as to writing went to the loan commitment, not to the application.

Mrs. Crouch argues that Buyers' trips and calls to other banks prior to August 13, 1998, constituted applying for loans. Mrs. Crouch thus attempts to argue that Buyer cannot waive the financing contingency and accept the responsibility of closing the transaction regardless of the terms of any loan. Mrs. Crouch fails to recognize that for the reasons discussed in Section V *infra*, the financing contingency was for the benefit of Buyers. Buyers therefore were entitled, whether they made loan application or not, to voluntarily waive the contingency. Also, the trial court could have easily considered the initial contacts with banks to be more in the nature of information gathering or a solicitation of an offer rather than an actual application for a loan, because no paperwork was ever filled out prior to August 13, 1998.

█ Mrs. Crouch also argues that because there were multiple copies of the contract with different dates (that had been attached to different versions of pleadings) the trial court was required to find the contract ambiguous. While there was different versions of the contract attached to different pleadings (petition and second amended petition), the version attached to the second amended petition was admitted as valid by Mrs. Crouch in the

motions for summary judgment. Further, Mrs. Crouch stipulated to the admission of Exhibit 2 without objection. Thus, the identity of the contract was stipulated at trial.

Mrs. Crouch argues that trial court demonstrated indifference to the contract date when it allowed buyers to amend by interlineation at the beginning of the trial, when the court stated "... this is a pretty minor point." This statement, however, is taken out of context. What the court did was to allow Buyers to amend their pleading by interlineation to conform to the date stated in the attached exhibit. This occurred after the parties had already filed and argued their motions for summary judgment. In that context, the trial court stated that allowing Buyers to amend the pleading to conform the date to the date stated in the exhibit was a "pretty minor point." Point IV is denied.

## Point V

Point V states as follows:

The Trial Court erred in finding the financing contingency was waiveable unilaterally by Buyers, because the Trial Court erroneously applied the law and there was no substantial evidence to support its conclusion, in that the financing contingency clause was for the benefit of both parties and thus not unilaterally waiveable by the Buyers.

Mrs. Crouch argues that because the provision allowing for the financing contingency benefited both parties, it was not waiveable.

█ A party may waive any condition of a real estate contract in his favor. *Fleischer v. McCarver*, 691 S.W.2d 930, 933 (Mo.App.1985); *Campbell v. Richards*, 352 Mo. 272, 176 S.W.2d 504 (Mo.1944). It is also well settled that a financing contingency in a contract calling for all cash at closing is for the sole benefit of the purchaser and may be waived only by the purchaser. *Fleischer*, 691 S.W.2d at 934; *McDermott v. Burpo*, 663 S.W.2d 256, 260–

62 (Mo.App.1983); *Arnold v. Smith*, 436 S.W.2d 719 (Mo.1969). It is understood that once the buyer waives the financing contingency, the buyer is locked into its obligations under the contract, and cannot be relieved of the obligation to close when it subsequently fails to obtain financing. *Mews v. Charlie Chan Publ. Co.*, 884 S.W.2d 109 (Mo.App.1994). Thus, it would seem odd to allow the seller out of the contract, but not the buyer, when the buyer has elected to waive the financing contingency. It is true that, in a given case involving a contract which does not require the entire closing amount to be in cash, it could be shown that the financing contingency clause was placed in the contract for the specific benefit of the seller as well as the buyer. *Fleischer v. McCarver*, 691 S.W.2d at 935 (trial judge heard evidence and found that at the time the contract was adopted, the financing clause was for the benefit of seller as well as buyer in the "not all cash deal"). In this case, however, unlike the contract in Fleischer, we are dealing with an "all cash" closing.

> If the buyer actually has the purchase price in cash to pay to the seller as required by the contract, it should not make any difference to the seller how the cash is obtained. In these circumstances, a seller cannot take advantage of the financing contingency to defeat the sale if the purchaser elects to waive it and proceed with the purchase according to the other terms of the agreement.

*Fleischer*, 691 S.W.2d at 934 (quotation and citations omitted).

Mrs. Crouch claims an interest in that she says she entered into a separate contract contingent on the Buyers obtaining a loan commitment, and also she needed to arrange for the disposal of her personal property at the acreage subject to the contract. Mrs. Crouch's contingency in the second property apparently was based upon the sale of this property. Mrs. Crouch neither adequately explained nor developed substantial evidence of this separate contingency, failing to offer into evidence the particular terms and circumstances of the other contract. In any event, in order to claim an enforceable right in the financing contingency, her need for the contingency would have had to exist at the time she entered into the contract with Dygert and the Norrises so that it was contemplated at that time. The question is whether it was included for the benefit of the seller at the time of the adoption of the contract, and not whether it *later* turned out that it would benefit the seller. *Cf. Fleischer* at 933 (*citing Dan Bunn, Inc. v. Brown*, 285 Or. 131, 590 P.2d 209, 215 (1979), stating the test is whether it was intended by both parties that such a contingency be included in the contract for the benefit of both parties, not whether the provision was in fact of benefit to both parties). In this case there is no evidence that, at the time of the contract was entered into, Mrs. Crouch had a need for the financing contingency and negotiated for it. Because this was an "all cash" closing, a cash payment by Buyers at closing would fulfill Buyers' obligation, thus presumably allowing Mrs. Crouch to fulfill her obligation on her contingent contract. Similarly, the need to dispose of her personal property is not unique to the financing contingency and can be met if the contract is converted to a cash contract by waiver by Buyers of the financing contingency inasmuch as the closing date and buyers' obligation to close is then certain.

Mrs. Crouch fails to demonstrate how the trial court failed to properly apply the law. Point V is denied.

### Point VI

In Point VI, Mrs. Crouch complains the court erred in ruling in favor of Buyers on her claim for slander of title, contending that "the contract was null and void at the time of recordation, was attempting to create a cloud on Mrs. Crouch's title, and was thus slanderous."

To establish a prima facie case for slander of title, Mrs. Crouch must prove

three things: (1) the words must be false; (2) they must be maliciously published; and (3) they must result in pecuniary loss or injury to the plaintiff. *Tongay v. Franklin County Mercantile Bank,* 735 S.W.2d 766, 770 (Mo.App.1987). The trial court held that Mrs. Crouch failed to meet the first and third elements as set forth in *Tongay.*

Mrs. Crouch argues she met the first element because the contract was not acknowledged and therefore not entitled to be recorded, and second the contract was null and void. Mrs. Crouch offers no authority for the contention that because a contract is not acknowledged it is false. Indeed all testimony at trial was that the contract was entered into. The only area of contention was the effective date of the contract.

Mrs. Crouch further argues that the contract was false because it was null and void. Mrs. Crouch assumes the contract was null and void, but the trial court properly found the contract to be valid under Missouri law, because the Buyers could waive the financing contingency and proceed as if a cash contract at closing. *Fleischer, 691 S.W.2d at 934; McDermott,* 663 S.W.2d at 260. Because Mrs. Crouch cannot show that the words were false, she fails to meet her burden. Point denied.

## Point VII

In Point VII, Mrs. Crouch contends the trial court erred in failing to direct the Buyers to perform their portion of the contract. She contends that there is no mutuality of performance required in the trial court's Judgment Entry because Buyers are not required to perform. The trial court ordered "The Real Estate Contract enforced in all respects.... As to those terms of the contract that are date-specific, the Court hereby orders Defendant to convey the property that is the subject of this action to the Plaintiffs on or before October 30, 1999." It would seem that by ordering the Real Estate Contract enforced in all respects, the trial court would retain jurisdiction to enforce compliance by Buyers. Mrs. Crouch presents no authority to the contrary. Because October 30, 1999, has already passed, the trial court, on remand, can establish a new date for closing and possession.

## Point VIII

In Point VIII Mrs. Crouch complains that the court's remedy as to the allegedly improperly recorded contract was incorrect in that the court merely awarded $25.00 in damages but did not direct the removal of the document from the records. The document lacked merely a notary's acknowledgment reciting the appearance of the plaintiffs before the notary and that they had executed the instrument as their free act and deed. Mrs. Crouch cites *Monia v. Oberle,* 530 S.W.2d 452 (Mo.App.1975), a case in which the court ordered removal from the real estate records of a fraudulently altered contract.

Mrs. Crouch cites no authority for the proposition that the only remedy or exclusive remedy for improper recording of a document is removal. While it is true that in *Monia* the court did remand with instructions to direct the removal of fraudulently altered documents from the records, there is nothing in the case to suggest that such action is appropriate in this case. Here there is no forgery, falsification or alteration of the document. It seems to us that there was no damage caused by the recording of the contract, and there remains no need to remove the contract. This is not the *Monia* case. In any event, we fail to see how the court could direct removal of the contract from the records without the Recorder of Deeds being a party to the case.[1] We could, of course, remand and direct that the Recorder of Deeds be joined, and directed to remove

---

1. We note that the Recorder of Deeds does not appear to be a party in the *Monia* case. It is unclear how the court order was enforced, unless, on remand, the Recorder was joined.

the contract. But to do so would be much ado about nothing, particularly since the contract and deed could be re-recorded after remand when the trial court establishes a new date for closing and possession. The contract is not fraudulent, and we see no right to compel its removal from the records. Point VIII is denied.

### Point IX

In Point IX, Mrs. Crouch argues that the court erred in awarding attorney's fees to Buyers, in that attorney's fees must be specifically pleaded under Rule 55.19, and in this case they were not pleaded specifically. In their Second Amended Petition, plaintiffs only mention of attorney's fees was in the prayer, in which, *inter alia,* plaintiffs prayed for "the Court order Defendant to pay Plaintiffs' attorney fees and the costs of this action ..."

Mrs. Crouch argues that without a specific allegation of the factual basis for attorney fees, the party claiming fees is not entitled to recover. Mrs. Crouch relies on *Fisher v. Fisher,* 874 S.W.2d 543 (Mo.App. 1994); *Washington Univ. v. Royal Crown Bottling Co.,* 801 S.W.2d 458 (Mo.App. 1990). The court in *Washington* indicated "that attorney's fees should not only be specifically prayed for in declaratory judgment actions, but also the facts giving rise to such relief should be pleaded." *Washington,* 801 S.W.2d at 470. Although the contract, which was attached to the petition, contained a specific provision related to the right to recover attorneys' fees, that provision, she says, was not specifically referred to in the petition.

Buyers point out that in both *Fisher* and *Washington* the plaintiffs had merely prayed for costs, while in this case Buyers prayed for attorney fees. The case law clearly makes a distinction between a prayer for costs and a claim for attorney fees, Buyers claim. Also, Buyers point out that, because the contract contained a clear provision for attorney's fees and the contract was incorporated into the petition, anyone referring to the petition could discern the basis of the prayer for attorney fees.

Buyers also argue that, in any event, Mrs. Crouch consented to the trial of the claim of the attorney fees by failing to timely object to the evidence of attorney's fees, citing *Wise v. Pottorff,* 987 S.W.2d 407, 410 (Mo.App.1999). The evidence concerning attorney fees took place in a separate hearing after the conclusion of all of the other issues had been tried. Buyers' attorney testified as to his legal efforts without objection by Mrs. Crouch, introduced time records into evidence without objection by Mrs. Crouch, and was then cross-examined concerning the time records by Mrs. Crouch's attorney. It was not until entirely *after* the attorney's fee issue had been fully tried, and the parties had rested, that Mrs. Crouch's attorney made any objection on the basis that Buyers were not entitled to seek attorney's fees because the request for fees was not specifically pleaded. It is inconsistent to allow the evidence of attorney's fees to be received in evidence without objection, and to fully try the issue, and then to later claim such evidence is irrelevant and inadmissible due to pleading inadequacy. Accordingly, we conclude that Mrs. Crouch waived the right to object to the evidence of attorney's fees, and waived the right to subsequently argue that the fees were not properly pleaded. The trial court did not err in allowing attorney fees.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded, however, for the trial court to establish a new date for the closing of the transaction.

ELLIS and LAURA DENVIR STITH, JJ., concur.