Kenneth HOWARD,
Plaintiff/Appellant/Cross–Respondent,

v.

T. French YOUNGMAN and Beverly A. Youngman, Defendants/Third–Party Plaintiffs/Respondents/Cross–Appellants,

Patricia J. Waelter,
Defendant/Respondent,

Coldwell Banker Ira E. Berry, Inc.,
Defendant/Respondent,

and

David Goings,
Defendant/Respondent/Cross–Appellant,

v.

Gordon A. Gundaker Real Estate Co. Inc., Third–Party Defendant/Cross–Respondent,

Gordon A. Gundaker, Third–Party Defendant,

and

Marilyn B. Doorack, Third–Party Defendant.

Nos. ED 79283, ED 79302, ED 79303, ED 79710.

Missouri Court of Appeals,
Eastern District,
Division One.

April 16, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 2002.

Application for Transfer Denied
Aug. 27, 2002.

W. Stanley Walch, Jeffrey R. Fink, Thompson Coburn LLP, St. Louis, MO, for appellant.

Steven L. Leonard, P.C., Clayton, MO, for respondents/cross-appellants.

Steven M. Cohen, Berger, Cohen & Brandt, L.C., Clayton, MO, for respondents Coldwell Banker, Ira E. Berry, Inc. and Patricia Waelter.

Gregg M. Lemley, Michael E. Franklin, Bryan Cave LLP, St. Louis, MO, for respondent/cross-appellant David Goings.

Paul F. Devine, Vatterott, Shaffar & Dolan, P.C., Maryland Heights, MO, for third-party/cross-respondent Gordon A. Gundaker Real Estate Co.

KATHIANNE KNAUP CRANE, Judge.

This appeal involves multiple contract and tort issues arising from the parties' treatment of the waiver provisions of a financing contingency clause in a standard residential real estate contract. Plaintiff contracted to purchase a home from the defendant homeowners but did not timely apply for the loan described in the contingency clause and obtained different financing. The homeowners treated their contract with plaintiff as terminated, contracted to sell the home at a higher price to a different buyer, also a defendant, and refused to close on plaintiff's contract. Plaintiff, who took the position that he had waived the financing contingency by not making a timely loan application, filed a lawsuit against homeowners, the subsequent buyer, and the homeowners' real estate broker to declare and enforce his rights under the contract and to recover damages for breach of contract and tortious interference with contract. Defendants responded with counterclaims, cross-claims, and a third-party claim against plaintiff's real estate broker.

The trial court entered summary judgment against plaintiff, holding that the contract had terminated and that plaintiff

had not met his burden with respect to any of the elements of his tortious interference claim against the homeowners' real estate broker. It awarded the homeowners and the subsequent buyer costs and attorney's fees. By summary judgment or dismissal, the trial court denied relief on the remaining counts of the homeowners' counterclaim against plaintiff, the homeowners' third-party claim against plaintiff's real estate broker, and the subsequent buyer's counterclaim against plaintiff for tortious interference with the subsequent buyer's contract.

The buyer, homeowners, and subsequent buyer each appeal from the trial court's judgment. We reverse the summary judgment entered against plaintiff and remand. We also reverse the awards of attorney's fees. In all other respects, we affirm.

### FACTUAL BACKGROUND

On July 7, 1998, plaintiff, Kenneth Howard, entered into a contract with defendants, T. French Youngman and Beverly Youngman, for the purchase of the Youngmans' home in Creve Coeur, Missouri. The parties used the St. Louis Association of Realtors Residential Form # 2090, dated 9/97. The contract contained the following financing provision:

4. METHOD OF FINANCING

**Conventional, FHA or VA Financing.** Buyer agrees to apply for a loan, as described below, within _two_ days after "Acceptance Deadline" date. If Buyer does not apply within that time for the loan described below, Buyer waives this financing contingency. Buyer agrees to do all things necessary, including but not limited to, the execution of loan applications and other instruments, and to cooperate fully in order to obtain the financing necessary to complete this transaction. If Buyer does not obtain a written commitment for a loan on the same terms as described below, or waive this contingency in writing, by 5:00 p.m. on _July 24, 1998_ (or any written extension), this contract is terminated and earnest deposit will be returned to Buyer subject to paragraph 12, less any expenses incurred by or in behalf of Buyer. If Buyer wants to accept a loan commitment on terms other than described below, he must either notify Seller in writing of his acceptance of different terms, or waive the financing contingency in writing by the loan commitment deadline. If commitment is not obtained or waived by the loan commitment deadline, Buyer expressly waives any right to close this sale and acknowledges Seller's right to sell this property to another party. Any loan commitment requiring any of buyer's property to be sold and/or closed shall not be considered a commitment hereunder. *(Note: Failure to "lock in", if available, may constitute a waiver by Buyer of the financing contingency.)* Buyer to provide (and authorizes lender to provide) Seller and agents a copy of the loan commitment. Buyer to pay mortgage insurance, if required.

The "Acceptance Deadline" was July 7, 1998. The described loan was a conventional fixed or adjustable rate loan for 80% of the sale price with the initial interest rate not to exceed the prevailing market rate and an amortization of 15 or 30 years. The contract set closing on July 30, 1998.

"Gundaker Realtors/BHG" (defendant Gordon A. Gundaker Real Estate Co., Inc. (Gundaker)) was shown on the contract as the "selling agency" and Marilyn Middlekauff as the "selling agent". The contract provided that the "selling agent" was the "buyer's agent," acting on Howard's behalf as buyer. "Coldwell Banker" (defendant Coldwell Banker Ira E. Berry, Inc. (Coldwell Banker)) was shown as the Young-

mans' "listing agency." Defendant Patricia Waelter was the Youngmans' "listing agent."

Howard did not apply for any loan by July 9, 1998. On July 10, 1998, Howard applied for a loan from Carrollton Bank in a lesser amount than described in the contingency clause and obtained a loan commitment for the lesser amount on July 14, 1998. Accordingly, Howard did not obtain a written loan commitment for a loan on the same terms as described in the contract. Further, he did not notify the Youngmans of his acceptance of different terms or execute a written waiver of the contingency by 5:00 p.m. on July 24, 1998.

On July 27, 1998, Waelter informed Howard's agent, Middlekauff, that Howard no longer had a contract for the property. Waelter told the Youngmans that Howard was "out of contract." On July 28, 1998, David Goings entered into a contract with the Youngmans to purchase the property for $15,000 more than Howard had contracted to pay. Goings' contract showed Gundaker and Patrick Tierney as his "buyer's agents."

On July 30, the Youngmans notified Howard, in a letter prepared by their attorney, that they believed their contract with Howard had terminated on July 24, 1998. Howard appeared for closing, but the Youngmans did not. That same day Howard filed an action against the Youngmans for specific performance. As a result of the litigation, Goings never purchased the home, but he has been leasing it from the Youngmans.

## PROCEDURAL BACKGROUND

*Howard's Claims*

Howard subsequently filed a second amended petition in which he sought de-

claratory judgment, injunction, and specific performance against the Youngmans and Goings with respect to the real estate contract (Count I), damages for breach of the real estate contract from the Youngmans (Count II), and damages for tortious interference with that contract from Waelter and Coldwell Banker (Count III). The Youngmans, Goings, Waelter, and Coldwell Banker each filed motions for summary judgment on the counts in which they were defendants.

*The Youngmans' Claims*

The Youngmans filed a counterclaim against Howard seeking a declaratory judgment in their favor with respect to the real estate contract (Count I). They also sought damages from Howard on a *respondeat superior* theory for tortious interference with the Howard contract by Gundaker (Count II) and for negligent misrepresentation by Gundaker (Count III). They further sought damages from Howard for breach of the Howard contract (Count IV), and for abuse of process (Count V). The Youngmans moved for summary judgment on their declaratory judgment count. Howard filed a motion to dismiss the remaining counts of the Youngmans' counterclaim for failure to state a claim for which relief could be granted.

The Youngmans filed a third-party petition against Gundaker and Gordon A. Gundaker [1] for damages for tortious interference with the Howard contract (Count I) and negligent misrepresentation (Count II). Gundaker filed a motion for summary judgment on both counts of the Youngmans' third-party petition.

*Goings' Claims*

Goings filed a counterclaim against Howard to recover damages for tortious

---

1. The Youngmans subsequently dismissed Mr. Gundaker. The Youngmans also filed cross-claims against Patricia Waelter and Coldwell

Banker and a third-party petition against Marilyn B. Doorack, which they later dismissed.

interference with the Goings contract (Count I) and for declaratory judgment with respect to the Howard contract (Count II). Goings filed a motion for summary judgment on his declaratory judgment count. Howard filed a motion to dismiss the tortious interference count for failure to state a claim upon which relief can be granted.

*Judgment*

The judgment is composed of a series of orders entered by the trial court. The trial court entered summary judgment against Howard and in favor of the Youngmans and Goings on the counts of the second amended petition and counterclaims relating to the construction and breach of the real estate contract. It also entered summary judgment against Howard and in favor of Coldwell Banker and Waelter on Howard's tortious interference with contract claim. It ordered Howard to pay the Youngmans' and Goings' costs as well as $55,737.50 in attorney's fees to Goings and $57,729.50 in attorney's fees to the Youngmans.

The court dismissed the remaining counts of the Youngmans' counterclaim. The court entered summary judgment against the Youngmans and in favor of Gundaker on the Youngmans' third-party claims for interference and negligent misrepresentation. The trial court dismissed Count I of Goings' counterclaim against Howard for tortious interference with Goings' real estate contract.

In sum, this judgment consisted of a declaration that the Howard contract had terminated after 17 days when plaintiff did not obtain or waive in writing the loan commitment described in the contract, that plaintiff had waived his right to close, and the Youngmans were not bound to perform; a determination that Howard had not met his burden with respect to demonstrating that Coldwell Banker induced the Youngmans to breach the Howard contract; an award of attorney's fees to the Youngmans and Goings; and the dismissal or denial of all other claims the parties had against each other. Howard, the Youngmans, and Goings have filed separate appeals, which we have consolidated.

## DISCUSSION

### I. *HOWARD'S APPEAL*

A. *Summary Judgment on Declaratory Judgment and Breach of Contract Claims*

In his first two points, Howard asserts that the trial court erred in entering summary judgment against him on his declaratory judgment claims against Goings and the Youngmans, his breach of contract claim against the Youngmans, and on Goings' and the Youngmans' claims against him for declaratory judgment. He argues in his first point that the trial court's finding that the contract terminated on July 24, 1998 was based on a misinterpretation of the contract. He contends that the financing contingency was solely for his benefit, that he waived the financing contingency as of July 10 because he had not applied for a loan by July 9, and that he was not required to take further action to waive the financing contingency. We agree and therefore do not reach the alternate ground for reversal asserted in his second point.

■ We review this appeal from summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When the underlying facts are not in question, disputes arising from the interpretation and application of contracts are matters of law for the court. *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 342 (Mo.App.2000).

The trial court concluded that the contract terminated on July 24, 1998 at 5:00 p.m. and that, pursuant to the terms of the contract, Howard expressly waived any right to close the sale and acknowledged the Youngmans' right to sell the property to another party. We disagree with this interpretation.

 A provision in a real estate contract that makes the contract contingent upon the buyer's obtaining financing is a condition.[2] *Dygert v. Crouch*, 36 S.W.3d 1, 5 (Mo.App.2001); *Koontz v. Lee*, 737 S.W.2d 766, 768 (Mo.App.1987); *Century 21 Al Burdack Realtors v. Zigler*, 628 S.W.2d 915, 916 (Mo.App.1982); *Flores v. Baker*, 678 S.W.2d 884, 886–87 (Mo.App. 1984); *Berger v. McBride & Son Builders, Inc.*, 447 S.W.2d 18, 19 (Mo.App.1969). A condition is defined as "an event, not certain to occur, which must occur unless its non-occurrence is excused before performance under a contract is due." Restatement (Second) Contracts Section 224. Contingency clauses are conditions, which, because they are meant to protect the buyer, are a condition of the buyer's duty, but not a condition of the seller's duty. *Id.* at Section 225, illus. 8; Section 226, illus. 4.

 Upon the non-occurrence of the stipulated event, the condition may be raised to avoid the contract. *Flores*, 678

S.W.2d at 886–87. Thus, in a real estate contract containing a contingency clause, upon the nonoccurrence of the condition (i.e., the buyer's obtaining financing), the buyer is *ipso facto* excused from performance. *Koontz*, 737 S.W.2d at 768. However, this rule presumes that the buyer's failure to obtain financing was in good faith. A real estate contract that contains a contingency clause imposes on the buyer " 'an implied obligation to use reasonable efforts in pursuing the financing set forth in the contract.' " *Grand & St. Louis Enterprises v. Powell*, 807 S.W.2d 129, 130 (Mo.App.1991) (quoting *Goldberg v. Charlie's Chevrolet Inc.*, 672 S.W.2d 177, 178 (Mo.App.1984)); *see also Hoelscher v. Schenewerk*, 804 S.W.2d 828, 830 (Mo.App. 1991). If the buyer does not make a good-faith effort to obtain the loan, the buyer cannot rely on the financing contingency to avoid liability on the contract. *Hoelscher*, 804 S.W.2d at 830.

 In any event, the buyer can elect to waive the contingency and proceed with the contract under the rule that a party may waive any condition of a contract in that party's favor. *Dygert*, 36 S.W.3d at 5; *Fleischer*, 691 S.W.2d at 933–34; *Campbell v. Richards*, 352 Mo. 272, 176 S.W.2d 504 (1944). Even in the absence of an express right of waiver, a

**2.** Missouri courts have described this as a "condition subsequent." *Koontz*, 737 S.W.2d at 768; *Century 21*, 628 S.W.2d at 916; *Flores*, 678 S.W.2d at 886–87; *Berger*, 447 S.W.2d at 19. In Missouri a "condition subsequent" has been defined as "one which by its express terms provides for an *ipso facto* cancellation on the happening or nonoccurrence of a stipulated event or condition." *Berger*, 447 S.W.2d at 19. However, Missouri courts have also characterized such a clause as a "condition precedent" to the purchaser's duty to perform. *Fleischer v. McCarver*, 691 S.W.2d 930, 933 (Mo.App.1985); *Richard's Original Long Creek L. v. Seymour Inn*, 791 S.W.2d 944, 946–47 (Mo.App.1990). Most re-

cently, this has been classified simply as a "condition" without any modifications. *Dygert*, 36 S.W.3d at 5.

The Restatement and commentators have abandoned the substantive distinction between "condition subsequent" and "condition precedent." Restatement (Second) Contracts Section 224 cmt. e; Section 230 cmt. a (1979). The Restatement has replaced "condition subsequent" with the concept of an event that terminates a duty. *Id.* at Section 230. "[A] discharge terminates the contract entirely and the parties are no longer bound to perform." 8 Catherine M.A. McCauliff, Corbin on Contracts Section 40.01 (Rev. ed.1999).

party may waive the occurrence of a condition and enforce the other party's duty to perform if the condition was included in the contract for the sole benefit and protection of the party waiving it. *Fleischer*, 691 S.W.2d at 933–34; *See* 8 McCAULIFF, CORBIN ON CONTRACTS Section 40.10 at 555. In an "all cash" real estate contract, a financing contingency is considered to be for the sole benefit of the buyer and only the buyer may waive it. *Dygert*, 36 S.W.3d at 5; *Fleischer*, 691 S.W.2d at 933–34. *See also* 18 THEODORE H. HELMUTH, MISSOURI PRACTICE Section 157 (2d ed.1998). On the other hand, when the seller takes back financing, the financing contingency is considered to be for the benefit of the seller as well as for the buyer because the seller's security is at risk. *Fleischer*, 691 S.W.2d at 934.

■■■■■ After a condition is waived, the parties are bound to perform their duties under the contract. 8 McCAULIFF, CORBIN ON CONTRACTS Section 40.01 at 515. Thus, once a buyer waives the financing contingency, the buyer is locked into its obligations under the contract and cannot subsequently be relieved of its obligations even if the buyer later fails to obtain financing. *Dygert*, 36 S.W.3d at 6; *Mews v. Charlie Chan Publ. Co.*, 884 S.W.2d 109, 111 (Mo.App.1994). If the buyer elects to waive the financing contingency and proceed with the purchase according to the other terms of the agreement, a seller cannot use that contingency to defeat the sale. *Fleischer*, 691 S.W.2d at 934; *McDermott v. Burpo*, 663 S.W.2d 256, 260 (Mo.App.1984).

If the buyer has the purchase price in cash to pay the seller, it should not matter to the seller how that cash was obtained. *Fleischer*, 691 S.W.2d at 934. It follows, then, that a seller cannot take advantage of the financing contingency to defeat the sale if the purchaser elects to waive it and

proceed with the purchase according to the terms of the agreement. *Dygert*, 36 S.W.3d at 6.

With these principles in mind, we examine the financing contingency clause in this contract. The condition or event that terminates buyer's liability is found in the fourth sentence: "If Buyer does not obtain a written commitment for a loan on the terms described below or waive this contingency in writing by 5:00 p.m. on *July 24, 1998* (or any written extension) this contract is terminated and earnest deposit will be returned to Buyer subject to paragraph 12, less any expenses incurred by or in behalf of Buyer."

However, the second sentence provides that the financing contingency itself is waived if buyer does not *apply* for the described loan within two days following the "Acceptance Deadline." Thus, if buyer does not make a timely loan application for the described loan, the financing contingency is waived and buyer is obligated to perform the contract.

If, however, buyer does make a timely loan application, the condition is not waived at that time, but the condition remains effective for another 15 days to give buyer time to obtain a *loan commitment*. The condition continues to protect buyer from being obligated under the contract if buyer does not receive a timely commitment for the described loan. In that situation, the contract is terminated unless buyer elects to waive the contingency clause in writing by July 24, 1998. The July 24 deadline constitutes a time limit on buyer's rights under the financing contingency. If buyer wishes to accept different terms or waive the condition of a loan commitment during the extended period, the buyer is required to give written notice of acceptance of different terms or waiver by the July 24 deadline. Failure to do so terminates the contract and waives buyer's right

to close on different terms. As a result, the July 24 date is the last date the contingency clause is available to buyer; the contract terminates if the buyer fails to timely obtain the requisite loan commitment or formally waive it.

■ By not applying for a loan by July 9, 1998, Howard waived the financing contingency. He was obligated to perform the contract and the contingency that he obtain a loan commitment was no longer operative. Likewise, the Youngmans were required to perform the contract. The provisions of the financing clause relating to notices to be given if the contingency was still in effect for the additional 15 days had no viability after the financing contingency was waived.

Accordingly, the trial court erred in entering summary judgment against Howard on Counts I and II of his second amended petition, Count I of the Youngmans' counterclaim, and Count II of Goings' counterclaim. Point one is granted.

B. *Summary Judgment on Tortious Interference Claim Against Coldwell Banker and Waelter*

In his third point Howard claims that the trial court erred in entering summary judgment in favor of Coldwell Banker and Waelter on his tortious interference with contract claim against them. The trial court concluded that Howard failed to meet his burden with respect to any of the elements of tortious interference. Coldwell Banker and Waelter respond that there is no genuine issue of material fact with respect to any of the elements of tortious interference, or in the alternative, they cannot be liable because they were the Youngmans' agents. We disagree.

■ Coldwell Banker and Waelter were defending parties who would not have the burden of persuasion at trial.

But, to establish a right to summary judgment, they had to show one of the following: (1) facts that negate any one of the claimant's elements facts; (2) that the claimant has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of the facts necessary to support the movant's properly pleaded affirmative defense. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Howard, as the non-movant, was not required to establish a right to judgment as a matter of law. *Id.* at 381–82. He was only required, if Coldwell Banker and Waelter made a *prima facie* case, to show that there is a genuine dispute as to the facts underlying their right to judgment. *Id.* at 382.

1. *Tortious Interference—Elements and Analysis*

■ The cause of action for intentional interference with performance of a contract by a third person is described as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

RESTATEMENT (SECOND) TORTS Section 766 (1979), quoted with approval in *Birdsong v. Bydalek*, 953 S.W.2d 103, 111 (Mo.App. 1997).

■ The elements of a claim of tortious interference with contract are: (1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by

the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's conduct. *Davis v. Board of Educ. of City of St. Louis,* 963 S.W.2d 679, 691 (Mo.App.1998). In analyzing the elements of this tort, Missouri courts have been guided by the RESTATEMENT (SECOND) TORTS, Sections 766–774. *See also Briner Elec. Co. v. Sachs Elec. Co.,* 680 S.W.2d 737, 741–43 (Mo.App.1984).

In the context of this appeal, we first review to determine if Coldwell Banker and Waelter made a *prima facie* case, that is, if they showed undisputed facts negating any one of these elements or showed that Howard was unable to produce evidence sufficient to allow the trier of fact to find the existence of any one of these elements.

a. *Contract*

Coldwell Banker and Waelter argue that there was no contract because the real estate contract which is the subject of this claim terminated on July 24, 1998. This argument is no longer viable in light of our holding that the contract did not terminate.

b. *Knowledge of the Contract*

There was no dispute that Coldwell Banker, the seller's listing agency, and Waelter, the seller's listing agent, knew that the contract had been entered into. They argue that they did not have knowledge of an "existing" contract because Waelter believed the contract had terminated on July 24 and Waelter did not know the facts that gave rise to Howard's theory that his contract was still in existence.

■■■■ A plaintiff "must show either that the interfering party had actual knowledge of the existence of the contract, and of plaintiff's interest in it, or that the interfering party had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contract and plaintiff's interest in it." 86 C.J.S. *Torts* Section 62 b (1997). The tort of intentional interference with a contract "presupposes knowledge of the plaintiff's contract or interest, or at least facts which would lead a reasonable person to believe that such interest exists. Without such knowledge, there can be no intent and no liability." W. PAGE KEETON *et al.,* PROSSER AND KEETON ON THE LAW OF TORTS Section 129 at 982 (5th ed.1984), quoted with approval in *Bell v. May Dept. Stores Co.,* 6 S.W.3d 871, 878 (Mo. banc 1999). "It is enough to show that defendant had knowledge of facts, which, if followed by reasonable inquiry, would have led to a complete disclosure of the contractual relations and rights of the parties." 45 AM.JUR. 2d *Interference* Section 11 (1969). In a claim for interference with an express contract, it is not necessary for the defendant to appreciate the legal significance of the facts that give rise to the contractual duty. *Property Tax Representatives, Inc. v. Chatam,* 891 S.W.2d 153, 160 (Mo.App.1995) (quoting RESTATEMENT (SECOND) TORTS Section 766, cmt. i). *Property Tax* further quoted the Restatement: "If he knows those facts, he is subject to liability even though he is mistaken as to their legal significance and believes that the agreement is not legally binding or has a different legal effect from what it is judicially held to have." *Id.*

■■■■ Coldwell Banker and Waelter argue that Waelter did not know facts from which she could conclude that Howard had waived the financing contingency. This is not the knowledge required by this element. She had actual knowledge that a valid contract had been entered into. She has not claimed that she made any inquiry about Howard's loan application or waiver. Under these circumstances, she could not reasonably rely on her lack of knowledge

or her incomplete knowledge to conclude that the contract had terminated. Further, even under Coldwell Banker and Waelter's theory of lack of knowledge, they were not entitled to summary judgment because Waelter's lack of knowledge was a matter of disputed fact. In his motion for summary judgment Howard alleged, based on his deposition testimony, that he had told Waelter of his waiver on July 18, 1998.

### c. Intentional Interference

 A defendant induces a breach of contract if he actively and affirmatively takes steps to induce the breach and the contract would have been performed absent interference from the defendant. *Tri–Continental Leasing Co. v. Neidhardt,* 540 S.W.2d 210, 216–17 (Mo.App.1976). Whether a defendant has played a material and substantial part in causing the plaintiff's loss of the benefits of the contract is normally a question of fact for the jury. WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS Section 129 at 935 (4th ed.1971); *see also Neidhardt,* 540 S.W.2d at 219 (question of proximate cause is ordinarily for jury determination). In his petition Howard alleged that he fulfilled all of his obligations under the contract and was ready to close, but that Coldwell Banker and Waelter advised the Youngmans that the contract was void, that they should disregard it, and that they should enter into the contract with Goings for a higher sales price. He further alleged that the Youngmans did so and did not close on Howard's contract.

In their motion for summary judgment, Coldwell Banker and Waelter alleged, based on Mr. Youngman's deposition, that they did not urge the Youngmans to sign the Goings contract, but told them that Howard was "out of contract" and the Youngmans could do whatever they wanted to do. They further alleged that the Youngmans acted on advice of counsel in entering the Goings contract and that the Youngmans' attorney prepared the letter the Youngmans sent to Howard notifying him that they were terminating the contract.

In response to the summary judgment motion, Howard set out as additional facts, citing the Goings deposition, that on July 26, 1998, Waelter or Doorack contacted Goings and set up an appointment for Goings to inspect the property on July 28, 1998 and told Goings that he needed to arrive early on July 28 in order to work out a deal with the Youngmans. Howard also alleged, citing multiple depositions, that Coldwell Banker and Waelter told the Youngmans that Howard was out of contract, that the contract between them and Howard was no longer valid, and that it was legal for them to enter into a contract with Goings. Howard further alleged, citing to both of the Youngmans' depositions, that the Youngmans would not have entered the Goings contract and would have sold the property to Howard, even on July 28, if Coldwell Banker and Waelter had not represented that Howard was "out of contract." Howard specifically alleged that Coldwell Banker and Waelter did not advise the Youngmans to speak with an attorney until after they had already entered into the Goings contract. The Youngmans testified that they did not consult with an attorney until after they signed the Goings contract. In her brief Waelter acknowledges that Mr. Youngman recanted his earlier testimony and testified in a later deposition that he did not contact his attorney until after he signed the Goings contract.

Coldwell Banker and Waelter also argue that they did not induce the Youngmans to breach the Howard contract because the Youngmans' breach of the Howard contract occurred when the Youngmans failed

to close under the Howard contract, not when they signed the Goings contract, and the Youngmans acted upon advice of their counsel in deciding not to close.

In response, Howard argues that the Youngmans' entry into the Goings contract on July 28 constituted an anticipatory breach of the Howard contract because, by entering into the Goings contract, the Youngmans manifested their intention not to perform under the Howard contract. *See Carmel v. Dieckmann,* 617 S.W.2d 459, 460–61 (Mo.App.1981). Further, Howard argues, the Youngmans did not consult an attorney or act upon the advice of an attorney when they signed the Goings contract and did not seek legal advice until after they signed the Goings contract.

■ The facts on this issue were disputed. There were insufficient undisputed facts on which the trial court could make its finding that the Youngmans acted on advice of counsel. Whether Waelter's advice to the Youngmans was the proximate cause of the Youngmans' breach of the Howard contract is a matter of disputed fact which precludes summary judgment with respect to this element.

d. *Absence of Justification*

■ "Absence of justification" means the absence of any legal right on a defendant's part to take the actions about which plaintiff complains. *SSM Health Care, Inc. v. Deen,* 890 S.W.2d 343, 346 (Mo.App. 1994). In his petition Howard alleged lack of justification in that Coldwell Banker and Waelter's advice to the Youngmans was false and constituted improper legal advice and that the advice was given to obtain a larger commission. Coldwell Banker and Waelter alleged in their motion that they would receive a commission upon the sale of the Youngmans' house. They argue that Waelter was privileged to interfere in the Howard contract to protect her own

economic interest in the higher commission. They specifically argue:

> Furthermore, one who has a present existing economic interest is privileged to interfere with another's business expectancy to protect one's own economic interest. *Community Title Co. v. Roosevelt Federal S & L,* 796 S.W.2d 369, 372 (Mo. en banc 1990). Competitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relationship. *Briner Elec. Co. v. Sachs Electric Co.,* 680 S.W.2d 737, 741 (Mo. App.1984).

■ This argument has no merit for a number of reasons. First, the two statements of law set out above are not only incomplete, but also deal with interference with a business expectancy or prospective contractual relationship, whereas the interference alleged was with an existing contract. This is an important distinction. The kind and amount of interference that may be justifiable with an expectancy is different from that with an existing contract. *Downey v. United Weatherproofing,* 363 Mo. 852, 253 S.W.2d 976, 980 (1953). An existing contract is entitled to greater protection than a mere expectancy of entering a contract. *Juengel Const. Co., Inc. v. Mt. Etna, Inc.,* 622 S.W.2d 510, 516 (Mo.App.1981).

■ Coldwell Banker and Waelter attempt to justify their conduct on the grounds that it was "competitive." This argument is misplaced. The qualified justification given to competition, which is set out in RESTATEMENT (SECOND) TORTS Section 768, has no application to the conduct in this case. There was no claim that Coldwell Banker and Waelter were "competing" with Howard for the Youngmans' business. In any event, the qualified justification for competitive conduct applies

only to a prospective contractual relation or the continuance of an existing contract terminable at will. RESTATEMENT (SECOND) TORTS Section 768; *Briner Elec.*, 680 S.W.2d at 741–742. It does not apply to existing contracts. *Downey*, 253 S.W.2d at 982.

Coldwell Banker and Waelter also claim a privilege under the rule set out in *Community Title Co.* The full statement of that rule is that one "who has a present existing economic interest, such as a prior contract of his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interests." *Community Title Co.*, 796 S.W.2d at 372. However, Coldwell Banker and Waelter did not show a present existing economic interest. They did not show a financial interest in the Youngmans' affairs or a prior contract of their own. The alleged financial interest, Waelter's interest in a larger commission, is not a "financial interest in the business of the person induced" that is, an investment. *See* RESTATEMENT (SECOND) TORTS Section 769. In addition, this rule specifically applies to interference with a *prospective* contractual relation, not an existing contract. *Id.* at Section 769, cmt. b. Likewise, Coldwell Banker and Waelter did not show that they had a prior contract of their own which they were lawfully entitled to enforce. *See id.* at Section 773.

If an existing contract is involved, we determine whether the actor's interference is improper by considering the factors set out in Section 767 of the RESTATEMENT (SECOND) TORTS. The actor's interest, including an economic interest, is one of these factors. Where the other party's interest is "consolidated into the binding legal obligation of a contract" as was Howard's, the other party's interest will nor-

mally outweigh the actor's own interest in taking that established right from him. *Id.*, cmt. f. Interests which may take precedence over an existing contract are set out in Sections 770–773. None of these rules would include the prospect of a larger commission within the types of interest which allow the actor to interfere with an existing contract.

Coldwell Banker and Waelter's economic interest in getting a higher commission if the Youngmans sold their home to a different buyer does not give them a legal right to interfere with an existing contract for the sale of that home.

e. *Damages*

 The trial court found that Howard failed to meet his burden to show damages. In their summary judgment motion, Coldwell Banker and Waelter did not allege that Howard did not or could not satisfy this element of the claim. They therefore did not make a *prima facie* showing of a right to judgment on the grounds that Howard could not show damages. Accordingly, Howard was not required to provide evidence in his summary judgment response to support an element Coldwell Banker and Waelter did not challenge. *See ITT Commercial Finance Corp.*, 854 S.W.2d at 381.

2. *Agency*

Coldwell Banker and Waelter argue that, even if they did not show undisputed facts negating one of the elements of Howard's claim, they cannot be liable because they were the Youngmans' agents. They base their argument on the rule that "[a] claim for tortious interference with contractual relations contemplates interference from a third party, not from a party to the contract itself," quoting *Fields v. R.S.C.D.B., Inc.*, 865 S.W.2d 877, 879 (Mo. App.1993). *Fields* held that a corporate officer or agent acting for the corporation

is the corporation for purposes of a tortious interference cause of action. *Id.* This is because "[c]orporations can *only* act through their agents." *Id.* (emphasis added) Coldwell Banker and Waelter do not cite any authority extending this rule to the residential real estate client/agent relationship and we are aware of none. Coldwell Banker and Waelter did not establish a right to judgment under *Fields.*

### 3. *Conclusion*

The trial court erred in granting summary judgment against Howard on his tortious interference claim against Coldwell Banker and Waelter because they did not show undisputed facts that negated any of the elements of that claim or that Howard would not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of those elements. Point three is granted.

### C. *Award of Attorney's Fees to Goings and the Youngman*

In his fourth and fifth points, Howard asserts that the trial court erred in awarding $57,729.50 in attorney's fees to Goings and $55,737.50 in attorney's fees to the Youngmans. We agree.

■■ Ordinarily, litigants must bear the expense of their own attorney's fees. *Wall USA, Inc. v. City of Ballwin,* 53 S.W.3d 168, 172 (Mo.App.2001). Attorney's fees may be awarded to a prevailing litigant only where authorized by statute or contract, in unusual circumstances where equity demands a balance of benefits, or where the attorney's fees are a result of collateral litigation. *Id.* Because Goings and the Youngmans are no longer prevailing parties, they are not entitled to attorney's fees. We do not need to decide whether any of those parties would have otherwise met the criteria for an award of fees. Points four and five are granted.

## II. THE YOUNGMANS' APPEAL

### A. Dismissal of Counts II and III of Counterclaim Against Howard for Acts of Gundaker

In their first two points, which they designate as Points Six and Seven, the Youngmans assert that, if this court reverses the summary judgment entered in their favor against Howard, the trial court erred in dismissing Counts II and III of their counterclaim against Howard on a *respondeat superior* theory for interference and negligent misrepresentation by Gundaker. In Counts II and III of their counterclaim, the Youngmans alleged that Gundaker, who was representing Howard in his purchase, also was representing Goings in his purchase, and made misrepresentations to the Youngmans about the validity and enforceability of the Howard contract, which misrepresentations induced them to treat the Howard contract as terminated and enter into the Goings contract. These points have no merit.

■■ We do not need to reach the questions whether these allegations state a claim on which *respondeat superior* liability can rest or even if such liability exists in light of Chapter 339 RSMo (2000) and Section 339.810.1. Even if such a claim were available and sufficient facts were stated to show that Gundaker was acting in the scope of its authority from Howard when it made the representations, there is no viable claim. When the right to recover depends solely on the doctrine of *respondeat superior,* there can be no judgment against the principal if the agent is found to not have committed a tort. *Arnold v. Erkmann,* 934 S.W.2d 621, 631 (Mo.App.1996). The trial court entered summary judgment in favor of Gundaker on the Youngmans' claims for tortious interference with contract and negligent

misrepresentation, which judgment we have affirmed elsewhere in this opinion.

Points six and seven are denied.

## B. Dismissal of Count IV of Counterclaim Against Howard for Breach of Contract

In Point Eight the Youngmans claim that the trial court erred in dismissing Count IV of their counterclaim against Howard for breach of contract. They claim Howard breached the clause which obligated Howard to "do all things necessary including, but not limited to, the execution of loan applications and other instruments, and to cooperate fully in order to obtain the financing necessary to complete this transaction."

■ The trial court did not err in holding that Count IV failed to state a claim. This clause expresses the duty of reasonable diligence and good faith that Missouri law imposes on a buyer who enters a contract that contains a financing contingency clause. Hoelscher, 804 S.W.2d at 830. When a buyer fails to pursue financing with reasonable diligence, the buyer cannot use the financing contingency clause to avoid the contract, but is bound by the contract and, if the buyer does not perform, the buyer is subject to all remedies for breach. Id. However, in this case, the buyer, Howard, was ready to complete the transaction and was not trying to use the financing contingency to avoid the contract. As a matter of law, he had waived the financing contingency and was locked into the other obligations of the contract. This clause cannot be the subject of a claim for damages if the buyer waives the financing contingency and stands ready to perform the contract. Point eight is denied.

## C. Dismissal of Count V of Counterclaim Against Howard for Abuse of Process

For Point Nine the Youngmans claim that the trial court erred in dismissing Count V of their counterclaim which sought damages from Howard for abuse of process. The Youngmans claim that Howard filed a notice of lis pendens and the lawsuit with malicious intention and conscious disregard of their rights which, when coupled with the prevention of the sale of the property, amounts to an abuse of process. The Youngmans now concede that Howard had an absolute and privileged right to file a notice of lis pendens. See Lippman v. Bridgecrest Estates I Unit Owners Ass'n, Inc., 991 S.W.2d 145, 152 (Mo.App.1998). They continue to claim abuse of process based on the filing of the lawsuit.

■ The elements of abuse of process are (1) an illegal and unauthorized use of process; (2) an ulterior motive for the use of that process; and (3) resulting damages. Pipefitters Health & Welfare Trust v. Waldo R., Inc., 760 S.W.2d 196, 198 (Mo.App.1988). A claimant must show that process has been used to accomplish an unlawful end or to compel the defendant to do something which he could not be compelled to do legally. Id.

■ The Youngmans did not allege facts showing an illegal and unauthorized use of process. The Youngmans only alleged that Howard told Waelter he would "muddy up the title" so no one could buy it and that Howard brought the lawsuit to compel the Youngmans to sell to him when they were not legally compelled to do so. The Youngmans did not allege any illegal or unauthorized use of process. "Abuse of process is not appropriate where the action is confined to its regular function even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an un-

founded claim." *Misischia v. St. John's Mercy Medical Center*, 30 S.W.3d 848, 862 (Mo.App.2000). "No liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time." *Pipefitters Health & Welfare Trust*, 760 S.W.2d at 198–99. Further, as a matter of law, the claim was not unfounded because the Youngmans were bound by the contract to sell to Howard. *See generally, Dillard Dept. Stores, Inc. v. Muegler*, 775 S.W.2d 179, 183–184 (Mo.App.1989). Point nine is denied.

D. *Summary Judgment in Gundaker's Favor on Counts I and II of the Youngmans' Third Party Petition*

In Points Ten and Eleven, the Youngmans assert that, if this court reverses the summary judgment entered against Howard, then the trial court erred in granting summary judgment in favor of Gundaker on the Youngmans' third-party claims against Gundaker for tortious interference and negligent misrepresentation. In their three-sentence arguments under each of these points, the Youngmans argue that, if this court finds the Howard contract to be valid, the summary judgment order against them in Gundaker's favor should be reversed so they are not left without a remedy for Gundaker's double representation, citing *Laughlin v. Boatmen's Nat'l Bank*, 354 Mo. 467, 189 S.W.2d 974 (1954). *Laughlin* does not apply.

 *Laughlin* held that, when the judgment on a count is reversed and remanded without limitation to a particular issue, the trial court must retry all issues comprehended by that count. 189 S.W.2d at 980. *Laughlin* does not support the Youngmans' procedural argument. The Youngmans do not argue on the merits why summary judgment was improper or cite any authority therefor. When a party

fails to support a contention with relevant authority or argument beyond conclusions, we consider the point abandoned. *Luft v. Schoenhoff*, 935 S.W.2d 685, 687 (Mo.App. 1996). *See also Real Estate Investors Four, Inc. v. American Design Group, Inc.*, 46 S.W.3d 51, 59 (Mo.App.2001). Points ten and eleven are denied.

*Conclusion*

The trial court did not err in dismissing Counts II through V of the Youngmans' counterclaim against Howard or in entering summary judgment in Gundaker's favor on Counts I and II of the Youngmans' Third–Party Petition.

## III. *GOINGS' APPEAL*

For his sole point Goings asserts that the trial court erred in dismissing his tortious interference claim against Howard. Goings argues that he properly pleaded each of the required elements.

 When we review a trial court's order dismissing a claim for failure to state a claim upon which relief can be granted, we give the pleadings their broadest intendment, and we construe all allegations favorable to the pleader. *Arnold*, 934 S.W.2d at 625–26. Facts must be alleged to support each essential element of the cause to be pleaded. *Id.* at 626. However, we do not accept a pleader's conclusions. *Id.*

 If the trial court does not state a basis for its dismissal of a cause of action, we presume the dismissal is based on the grounds stated in the motion to dismiss. *Berkowski v. St. Louis County*, 854 S.W.2d 819, 823 (Mo.App.1993). However, we must affirm the dismissal of the action if that dismissal can be sustained on any ground which is supported by defendant's motion regardless of whether the trial court relied on that ground. *Property Ex-*

*change & Sales, Inc. v. King,* 822 S.W.2d 572, 573 (Mo.App.1992).

We have set out the essential elements of a claim of tortious interference with contract in part I.B.1 of this opinion. In his counterclaim, Goings attached the Howard contract and pleaded that it was terminated, that he entered into his own contract with the Youngmans, and that Howard intentionally interfered with the Goings contract without justification by filing his lawsuit and notice of lis pendens which prevented the Youngmans from transferring clear title to Goings.

■■■ Goings has conceded on appeal that he cannot base this tortious interference claim on Howard's notice of lis pendens, to which absolute privilege attaches. *Lippman,* 991 S.W.2d at 152; *see also, Birdsong,* 953 S.W.2d at 113–14.

Goings' conclusory allegation that the Howard contract was terminated is, as we have held, erroneous as a matter of law. Absent that allegation, Goings' claim rests only on the allegations that both he and Howard had contracts to purchase the Youngmans' property and that Howard interfered with the Goings contract without justification by filing the lawsuit to compel enforcement of the Howard contract. These allegations do not state a claim for which relief can be granted.

■■■ "No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Community Title Co.,* 796 S.W.2d at 372; *see also Pillow v. General American Life Ins. Co.,* 564 S.W.2d 276, 281 (Mo.App. 1978). One who has a bona fide legal economic interest to protect is privileged to prevent performance of a contract which threatens that bona fide legal economic interest. *Francisco v. Kansas City Star*

*Co.,* 629 S.W.2d 524, 534 (Mo.App.1981). There is no improper interference where one intentionally causes a third person not to perform an existing contract by asserting in good faith one's own legally protected interest. RESTATEMENT (SECOND) TORTS Section 773. Under this rule, if two parties have separate contracts with a third party, each may resort to any legitimate means at his or her disposal to secure performance of his or her own contract, even though a breach of the other contract will necessarily result. *McReynolds v. Short,* 115 Ariz. 166, 564 P.2d 389, 394 (App.1977); *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 112 P.2d 631, 633 (1941); RESTATEMENT (SECOND) TORTS Section 733, cmt. a, illus. 3. This point is denied.

## CONCLUSION

The summary judgment entered against Howard in favor of the Youngmans, Goings, Coldwell Banker and Waelter on the second amended petition and the declaratory judgment counts of the Youngmans' and Goings' counterclaim is reversed and remanded. The awards of attorney's fees to Goings and the Youngmans are reversed. In all other respects the judgment is affirmed.

WILLIAM H. CRANDALL, JR., P.J. and ROBERT G. DOWD, JR., J., concur.