Argued and submitted January 13, affirmed March 2, 1981

## PRESTIGE HOUSE, INC.,
*Respondent,*

*v.*

## MERRILL,
*Appellant.*

(No. A7808-12890, CA 16887)

624 P2d 188

Jeffrey M. Batchelor, Portland, argued the cause for appellant. With him on the briefs were Schwenn, Bradley, Batchelor & Brisbee, DeMar L. Batchelor, Hillsboro, Spears, Lubersky, Campbell & Bledsoe, and James H. Clarke, Portland.

Alan H. Tuhy, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

**YOUNG, J.**

Plaintiff-purchaser brought suit to enforce an earnest money agreement for the sale of a parcel of undeveloped real property in Multnomah County. The trial court, without written findings of fact, granted specific performance. We review *de novo* and affirm.

The only question presented by this appeal is whether plaintiff's failure to perform timely a condition precedent (acquisition of two building permits) prevents enforcement of the agreement.

In June, 1977, the defendant-seller listed the property for sale with a realtor, Mike Cavanaugh, at a price of $60,000. On October 11, 1977, plaintiff, working with Cavanaugh, prepared a written offer to purchase, using a printed form entitled "Sale Agreement and Receipt for Earnest Money." Plaintiff offered to pay $45,000, with $5,000 down and the balance together with interest at 8-3/4 percent per annum to be paid monthly over a period of ten years. The offer contained the following condition:

"TRANSACTION SUBJECT TO: Purchaser obtaining at least two building permits on or before April 1, 1978. Purchaser to have the right to pay balance in full at any time with no prepayment penalty."

The plaintiff's proposal also provided the transaction was to be closed in escrow on or before April 25, 1978.

On October 14, 1977, the realtor submitted the offer to defendant, at which time the defendant, with the realtor's assistance, executed an "Owner's Counter-Offer." The counter-offer consisted of a form stapled as an attachment and second page to the plaintiff's proposal. The form provided: "Any part of the buyer's original written offer not hereinabove changed, altered or modified is approved by the seller * * *." In the space provided for modifications, defendant inserted a modest increase in the interest rate and the following handwritten condition:

"Purchaser and Seller agree that *this agreement shall become null and void if all contingencies are not removed on or before April 25, 1978* and xxxxxx [sic] release each other and the Realtor from any liability from this transaction and purchaser shall have no further claim on this property." (Emphasis supplied.)

At trial, defendant explained that his reason for having Cavanaugh insert this condition was to avoid delay:

"Q    Did you have any specific conversation with [Cavanaugh] about the conditions?

"A    [Defendant] The only specific conversation I remember having, I told him I would accept this proposal if he would assure we wouldn't have any unnecessary delays at closing time, if he would make it clear and simple if the conditions, contingencies were met it was a deal. If the contingencies were not met it was no deal and Mike * * * added [the condition] then starting with 'Purchaser and Seller agree. . . .' "

After the counter-offer was prepared and signed, Cavanaugh delivered it to plaintiff for its review. Hartmut Presterl, president of the plaintiff corporation, then inserted the following language:

"Purchaser reserves the option of waiving the contingencies and proceeding with this purchase."

Presterl signed the counter-offer on behalf of the corporation, and Cavanaugh returned it to defendant. An escrow account was opened with a title company.

The building permits were not issued by the date set for closing. Plaintiff did, however, make some progress by obtaining preliminary approval for water service and sewage disposal. There is no indication in the record that building permits would not have been issued, given more time.

At trial, Presterl testified that during the months following execution of the earnest money agreement defendant had been perfectly willing to complete the sale and was unconcerned about the building permits. The first hint that the deal might turn sour came just prior to closing when Presterl told the defendant that, in order to obtain a loan to build a house on the property, the corporation would have to own the property free and clear and pay defendant the purchase price in full, as plaintiff had a right to do by the terms of the earnest money agreement. Defendant expressed concern that payment in full would cause him adverse tax consequences and asked Presterl not to cash him out.

Subsequently, defendant learned that the building permits had not been obtained. He notified the title company and declared the contract null and void. Plaintiff waived the condition and through the title company informed defendant of its intention to proceed with the sale. Defendant refused.

The parties first dispute whether the language inserted into the counter-offer by Presterl giving plaintiff "the option of waiving contingencies" became part of the agreement. Defendant testified that the waiver language was not shown to him and was not discovered by him until just prior to closing. We will assume the provision did not become part of the contract.

■■ Despite the absence of an express right of waiver, a party may waive the occurrence of a condition precedent and enforce the other party's duty to perform if the condition was included in the contract for the sole benefit and protection of the party waiving it. *See Dan Bunn, Inc. v. Brown,* 285 Or 131, 590 P2d 209 (1979); *Usinger v. Campbell,* 280 Or 751, 572 P2d 1018 (1977); *Spinner v. Stacy,* 45 Or App 483, 608 P2d 609 (1980); 3A Corbin, Contracts 516-17, § 761 (1960). Therefore, in the present case, if acquisition of the building permits was included for defendant's benefit as well as plaintiff's, the plaintiff's unilateral waiver of the condition would be ineffective, and the failure to obtain the building permits would prevent enforcement of the contract.

Defendant argues that issuance of building permits would enhance his security and that he would not have accepted the contract without the additional security. While issuance of building permits would not have required plaintiff to improve the property, we agree in principle that their existence would increase the value of the property to some extent. We do not believe, however, that that was the reason for including that condition in the contract. From the time the agreement was executed until the date of closing, defendant made no demands regarding the building permits, and he expressed no concern to anyone for his security. The only specific conversation he remembers having is that he wanted all contingencies removed to avoid unnecessary delay. We believe delay was

his only concern. To protect himself, defendant, in his counter-offer, proposed that all contingencies would have to be "removed" by April 25, 1978, or else the agreement would be null and void. By waiving the condition, plaintiff effectively *removed* it. The requirement that the condition be *fulfilled* on or before April 1, 1978, was inserted by plaintiff for its sole benefit and protection. Plaintiff was entitled to waive it.

Affirmed.