Alfred FLEISCHER, Sr., and Eva L. Fleischer, his wife, Plaintiffs-Appellants,

v.

William C. McCARVER, Defendant-Respondent.

Nos. 48416, 48437.

Missouri Court of Appeals, Eastern District, Division One.

May 28, 1985.

Thomas E. Toney, III, St. Louis, for plaintiffs-appellants.

Raymond A. Bruntrager, St. Louis, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

Plaintiffs-sellers filed a declaratory judgment action seeking to void a contract for the sale of real estate. Defendant-Purchaser filed a two count counterclaim requesting specific performance and damages for breach of contract. The trial court held the sales contract was null and void and entered judgment for sellers on its petition and entered judgment for sellers on Count I of purchaser's counterclaim for specific performance. However, it found for purchaser on Count II of the counterclaim and entered a judgment in its favor for $7,500.00 representing an amount for attorney's fees. Both purchaser and sellers have appealed. The appeals have been consolidated.

On or about February 2, 1979, purchaser and sellers entered into a contract for the sale of the Ellington Apartments and garage and the ABC Condominiums located in the City of St. Louis. The contract for the Ellington Apartments and Garage provided for a purchase price of $860,000.00. It also provided for a financing contingency as follows:

Purchasers shall undertake forthwith to secure, in good faith a commitment for a deed of trust on the subject real property from a lending institution, in the net amount of $602,000.00. Seller will assist in obtaining the above described financing commitment. The terms of the loan and the expenses thereof shall not be less favorable to purchaser than the following: annual interest rate; twelve per cent (12%); amortization: at the rate of twenty-five years (25) with a term of (10) years; and one point.

This contract is subject to and conditional upon purchasers obtaining a commitment for such loan on such terms, or better, on or before February 21, 1979, unless said contingency date is waived in writing by seller.... Purchaser shall keep seller advised of the progress of such loan application or applications, and seller shall have the right to assist and participate in the same.

If purchaser is unable to obtain such a commitment by the stated date, then the contract shall terminate and end, and same shall be cancelled and rescinded. Seller shall return to purchaser any sums theretofore paid on account of the purchase price.

The contract for the sale of the ABC Condominiums provided for a purchase price of $440,000.00. It provided for a financing contingency as follows:

The purchaser shall undertake to secure, in good faith, a commitment for a deed of trust in the subject real property from a lending institution, in the net amount of not less than Three Hundred Twenty-One Thousand Dollars ($321,-000.00). The terms of the loan and the expenses thereof shall not be less favorable to purchaser than the following: annual interest rate: two (2) points over

prime, one (1) year, and said loan shall be reduced by ten (10) per cent plus one (1) point as each condominium unit is sold by the said William McCarver. No interim payments shall be due unless a unit is sold. This contract is subject to and conditioned on purchaser's obtaining a commitment for such loan on such terms, or better, on or before February 21, 1979.

Seller shall accept from purchaser a second deed of trust on purchaser's property located at 765 Westwood—The Moorland, in Clayton, Missouri, which purchaser warrants to have been previously appraised in value of $_____.

The terms of the second deed of trust ... shall be as follows: Eighty Five Thousand Dollars ($85,000.00) principal amount, at an annual interest rate of fourteen percent (14%), for a term of six (6) months.

The contract further provided that failure to close on either the contract for the sale and purchase of the Ellington Apartments and Garage or the contract for the sale of the ABC condominiums if occasioned by the defendant's failure to obtain financing on either contract would terminate both contracts. The contract for the Ellington Apartments contained a similar provision.

Purchaser failed to obtain financing on or before February 21, 1979 and the sellers in writing extended the financing contingency date to 5:00 p.m. February 28, 1979. On February 26, 1979, purchasers obtained a commitment for financing from Mark Twain National Bank for the purchase of the Ellington Apartments and garage. The commitment was for a loan of $700,000.00, interest at a rate of 2% over prime with an origination fee of 1% with a term of one year. In addition, the loan commitment required the purchaser put up as additional collateral a $50,000.00 one year certificate of deposit, and maintain $100,000.00 in average monthly deposits. Sometime before February 28, 1979, purchaser obtained a commitment for financing from Mercantile Bank for the purchase of the ABC Condominiums. This commitment was for a loan of $355,000.00 with interest at 2% over prime, an origination fee of ½%, six month term and with each condominium unit being released upon payment of $45,000.00.

These were the only two loan commitments purchaser obtained. It is conceded that these commitments did not meet the financing contingency set forth in the sale contracts.

According to purchaser's evidence, sellers were notified of these loan commitments before 5:00 p.m. February 28, 1979. However, sellers' agents denied receiving any communication before 5:00 p.m. on February 28, 1979 from purchaser or his agents indicating that purchaser had received a financing commitment for the sale of the two properties. Sellers introduced into evidence a letter dated March 1, 1979, from purchaser's real estate agent addressed and delivered to sellers on March 1, 1979, which stated that purchaser had a verbal loan commitment and requested an extension to March 6, 1979 to "remove the loan contingency." A representative from the real estate agent's office testified the letter was sent without authorization. By letter dated March 1, 1979 and delivered to purchaser's agent on March 1, 1979, sellers refused to grant the extension requested by purchaser and declared the two contracts null and void. On March 5, 1979, purchaser's attorney wrote sellers and advised them purchaser had the financing enclosing a copy of the two loan commitments, and asserted that purchasers would appear at closing. Seller's son, Alfred Fleischer, Jr., who possessed a power of attorney for the sale of these two properties, testified that after he reviewed the loan commitments, he determined they were not adequate and did not comply with the contract financing contingency. On March 7, 1979, purchaser appeared at closing, but sellers failed to appear. Sellers thereafter returned the earnest money deposits.

Sellers then brought this action for declaratory judgment and purchaser counterclaimed for specific performance and damages. The trial court filed findings of fact in which it found:

The typed portion of the Fifth Addendum to both of the said contracts were prepared by the attorney for the plaintiffs and the typed portions of said Fifth Addendum were insisted upon by the plaintiffs. Part of the typed portions of the said Fifth Addendum relates to the financing contingency for the sale and purchase of the Ellington Apartments and the Ellington Garage. All of the financing contingency relating to the Ellington Apartments and the Ellington Garage is found in the said Fifth Addendum. The financing contingency in the contract for the sale and purchase of the 12 condominium units of the ABC's was insisted upon by the plaintiffs.

Even if said two contracts allowed for a waiver of the financing contingencies such financing contingencies had to be waived by both the plaintiff and the defendants and the plaintiffs did not waive the financing contingencies.

The court held that the two contracts are no longer in force and effect and entered judgment for sellers on Count I of their petition. The court though found that the "net effect of plaintiffs' actions in the conduct of the ongoing protracted negotiations herein in fact misled defendant to defendant's damage (the loss of the purchase sought herein) and the incurring of attorney's fees." It ordered judgment for purchaser on Count II of its counterclaim for $1.00 in damages and $7,500 in attorney's fees.

In its appeal, purchaser contends that the court erred in finding the contracts null and void because the financing contingency had not been waived by sellers.

At the outset, we note that the contract required that purchasers have a commitment for financing by 5:00 p.m. February 28, 1979 unless the date was waived in writing by seller. The contract also required purchaser to keep seller advised of the progress of any loan application. These provisions placed a burden on the purchaser to advise sellers that they had either received the requisite financing or had waived the financing contingency by February 28, 1979 at 5:00 p.m. The parties clearly treated the contract in this manner. Purchaser concedes he did not have the financing required by the contract. There is substantial dispute in the record as to whether purchasers had waived the financing contingency by February 28, 1979 at 5:00 p.m., a fact issue which the trial court did not resolve. Nonetheless, for the purpose of appellants' point, we shall assume that purchaser timely waived the financing contingency. This brings us to the central query in this case whether sellers had to waive the financing contingency.

It is well settled law in Missouri that a party may waive any condition of a real estate contract in his favor. *Campbell v. Richards*, 352 Mo. 272, 176 S.W.2d 504 (1944). Even in the absence of an express right of waiver, a party may waive the occurrence of a condition precedent and enforce the other party's duty to perform if the condition was included in the contract for the sole benefit and protection of the party waiving it. *Prestige House, Inc. v. Merrill*, 51 Or.App. 67, 624 P.2d 188, 190 (1981); *See* 3A Corbin, Contracts 516–17, § 761 (1960); 17A CJS Contracts § 491, pp. 688–91. Whether such a condition is for the benefit of the buyer, or the seller, or both, must be determined under the facts and circumstances of each case and, of course, by the language of the agreement entered into between them. *La Grave v. Jones*, 336 So.2d 1330, 1332 (Ala.1976). Another court has stated that the test is whether it was intended by both parties that such a contention be included in the contract for the benefit of both parties, not whether the condition was in fact of benefit to both parties. *Dan Bunn, Inc. v. Brown*, 285 Or. 131, 590 P.2d 209, 215 (1979).

■ It has been uniformly held that in an "all cash" real estate contract a financing contingency is considered for the sole benefit of the purchaser and it may be waived by the purchaser alone. *McDermott v. Burpo,* 663 S.W.2d 256, 260–61 (Mo.App.1983); *Deal v. Dickson,* 231 Ga. 366, 202 S.E.2d 41, 42 (1973); *Smith v. Nash,* 571 S.W.2d 372 (Tex.Civ.App.1978); *Edwards v. McTyre,* 246 Ga. 302, 271 S.E.2d 205, 206 (1980); *Blower v. Jones,* 226 Ga. 847, 178 S.E.2d 172, 173 (1970); *Mezzanotte v. Freeland,* 20 N.C.App. 11, 200 S.E.2d 410 (1974); *Lipscomb v. Chadbourne,* 378 So.2d 147, 149 (La.App.1979); *Wolf v. Crosby,* 377 A.2d 22 (Del.Chanc. 1977). As the Georgia Supreme Court explained in *Edwards v. McTyre,* 246 Ga. 302, 271 S.E.2d 205, 206 (1980), "[I]f the buyer actually has the purchase price in cash to pay to the seller as required by the contract, it should not make any difference to the seller how the cash is obtained." *See Lipscomb v. Chadbourne,* 378 So.2d 147, 149 (La.App.1979); *Lotz v. Messler,* 369 So.2d 265, 266 (La.App.1979). In these circumstances, a seller cannot take advantage of the financing contingency to defeat the sale if the purchaser elects to waive it and proceed with the purchase according to the other terms of the agreement. *McDermott v. Burpo,* 663 S.W.2d 256, 260 (Mo.App. 1983); *Smith v. Nash,* 571 S.W.2d 372, 375 (Tex.Civ.App.1978); *Renouf v. Martini,* 577 S.W.2d 803, 804 (Tex.Civ.App.1979).

■ However, in real estate sale contracts where the seller takes back financing, conditions which impair his security are considered for the benefit of the seller as well as the buyer. *Lehman v. Williamson,* 35 Colo.App. 372, 533 P.2d 63, 66 (1975); *Schaffres v. Columbia Realty Co.,* 244 Md. 270, 223 A.2d 619, 625 (1966); *Dan Bunn, Inc. v. Brown,* 285 Or. 131, 590 P.2d 209, 215 (1979).

Thus in *Lehman,* where seller was to finance part of the purchase price, a provision in the sale contract requiring purchaser to obtain an easement to drill a well, was considered a condition for the benefit of seller as well as purchaser because irrigation on the tract enhanced the parcel's value and added to the security of the deed of trust which seller was to carry. The court held that purchaser could not waive the provision alone and consequently purchaser was not entitled to specific performance of the real estate contract. In *Scheffres v. Columbia Realty Co.,* an action for specific performance, a contingency in a real estate sales contract for the trade of certain acreage with the Board of Education was also considered for the benefit of the seller whose "security for its deed of trust would be impaired to some relatively small degree if the contingency were not carried out as provided in the contract of sale." 223 A.2d at 625. The court held the provision could not be waived by purchaser alone. In *Dan Bunn, Inc. v. Brown,* 285 Or. 131, 590 P.2d 209 (1979), a contingency requiring purchaser to obtain a "favorable subdivision report" was considered for the benefit of both parties, because "the seller of unimproved real property to a 'subdivider' who intends to subdivide it and to obtain funds with which to make payments to the seller from the proceeds of the sale of subdivided lots has a clear interest in receiving assurance that the subdivision of the property will be approved regardless of other provisions relating to security and remedies in the event of default." 590 P.2d at 215. The Oregon Supreme Court held that in the absence of a waiver of this provision by seller, purchaser was not entitled to specific performance of the real estate contract.

In light of this case law, we examine the facts in the case at bar more closely. Sellers testified that the financing contingency in the sale contract was insisted upon by them. Seller's attorney testified:

The package was for a million three. When our negotiations started, Mr. Fleischer wanted—we wanted an all-cash deal, a million three. That could not be worked out. After much negotiation,

Mr. Fleischer had agreed to take back a second deed on another piece of property that Mr. McCarver owns for $85,000, and he was also going to obtain financing for a substantial part of the purchase price. It was critical in our negotiations in order to secure $85,000, that Mr. McCarver have long term financing on his loan. We felt that our $85,000, which was secured by, in our opinion, a questionable piece of property, was basically unsecured. We wanted Mr. McCarver to be able to meet his cash flow commitments on his loan so we could get out $85,000, which was due, if I recall, in six months. We were very, very concerned about that, and we felt that the only way we could get our $85,000 in six months after the closing was for long term financing."

Purchaser presented no evidence as to the value of the Clayton property or the amount of the first deed of trust. Sellers were never requested to waive the financing terms of the contract.

Sellers' son, Alfred Fleischer, Jr., testified that after he saw the loan commitments, he objected to the loan commitments because the interest rate was higher than that called for in the sales contract and they were short term. In addition, he testified that he also objected to the requirement of the Mark Twain loan commitment that purchaser keep $150,000.00 in cash on deposit. He testified that that requirement weakened the security of the $85,000.00 second deed of trust.

Purchaser argues that the language of the contract itself established that the financing provision was for his benefit alone. He points specifically to the phrase, "the terms of the loan and the expenses thereof shall not be less favorable to purchaser than the following...." However, if sellers had an interest in keeping the purchaser's debt load at a manageable level during the period they were to have a security interest in purchaser's property then the phrase protects purchaser as much as it protects sellers.

█ The trial judge heard the evidence, conflicting in nature, and found that the financing contingency clause was for the benefit of sellers as well as purchaser. We have concluded that his finding is supported by the evidence and is not erroneous as a matter of law. This was not an all cash deal. Sellers did have an interest in the terms of the financing for so long as it could affect their security in the Clayton property. The contract for the ABC Condominiums required a loan term of one year. The commitment received from Mercantile Bank was for a six month term. Thus, both the $355,000.00 Mercantile loan and the note on the second deed of trust carried by sellers would come due at the same time. Moreover, the commitment from Mark Twain Bank required purchaser to maintain $150,000.00 on deposit with the bank. In these circumstances, we cannot conclude the trial court erred.

Purchaser asserts that his net worth was in excess of 1.9 million dollars and therefore sellers' assertion that the financing contingency was for their benefit is devoid of merit. While purchaser's financial position is a relevant factor in determining for whose benefit this provision was inserted in the contract, in the circumstances of this case, it does not as a matter of law establish that the provision could not be for sellers' benefit.[1]

Sellers never waived the financing contingency, so the contract is null and void. The trial judge's decision as to Count I of plaintiff's petition is affirmed.

█ Sellers appeal from the judgment for $7,500.00 for purchaser on Count II of his counterclaim. As we have already held the contract was null and void. There were no damages to purchaser.

---

1. The exhibit which established purchaser's net worth was not filed with this court. We thus do not know the type of purchaser's assets, whether they were liquid or exempt from execution because held by tenancy of the entireties.

The judgment as to Count I of plaintiffs' petition and Count I of the counterclaim is affirmed. The judgment of Count II of defendant's counterclaim is reversed.

CARL R. GAERTNER and KAROHL, JJ., concur.