Nicholas G. PELLIGREEN and Amy L. Pelligreen, Respondents,

v.

Herman WOOD and Rosemary Wood,

and

The Liberty Program, Inc., d/b/a Interstate Court Services,

and

Stephen P. Austin,

and

Tess M. Bodecker–Cova, Appellants.

No. ED 81093.

Missouri Court of Appeals, Eastern District, Division Two.

May 6, 2003.

Motions for Rehearing and/or Transfer to Supreme Court Denied July 3, 2003.

Application for Transfer Denied Aug. 26, 2003.

Charles M.M. Shepherd, Shepherd, Taylor & Smallwood, L.L.P., Clayton, MO, for appellants The Liberty Program, Inc., d/b/a Interstate Court Services, Stephen P. Austin & Tess M. Bodecker–Cova.

Harold G. Johnson, Mitchell D. Johnson, St. Ann, MO, For Appellants Herman Wood and Rosemary Wood.

William J. Travis, Gregory C. Mollett, David Simmons, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellants, Herman and Rosemary Wood (collectively "sellers") and The Liberty Program, Inc., Interstate Court Services,[1] Stephen P. Austin, and Tess M. Bodecker Cova (collectively "tenants") appeal from the judgment, after a bench trial of the Circuit Court of St. Louis County regarding the attempted sale of real property ("property"). Nicholas and Amy Pelligreen ("plaintiffs") filed a petition against sellers for specific performance and equitable accounting ("Count I"), breach of contract ("Count II"), and fraud ("Count III"). Plaintiffs also filed a petition against both sellers and tenants for a declaratory judgment ("Count IV") concerning plaintiffs' rights in the property. Tenants filed a counterclaim/cross-claim for a declaratory judgment concerning tenants' rights in the property and for reimbursement of costs and attorney's fees from sellers. The trial court found in favor of plaintiffs on Count I, Count II, and Count IV. The trial court found in favor of sellers on Count III. The trial court found in favor of plaintiffs and sellers on tenants' counterclaim/crossclaim. We reverse and remand.

The property, which consists of a lot with a one-story building, is located at 10423 Liberty in Overland, Missouri. Sellers owned the property. On February 1, 2000 sellers and tenants entered into a five-year commercial lease with an option to purchase the property.

Stephen P. Austin ("Mr. Austin") signed the lease in his individual capacity and on behalf of Liberty Program, Inc. ("Liberty"). Tess Bodecker–Cova ("Ms. Bodecker–Cova") also signed the lease in her individual capacity. Mr. Austin and Ms. Bodecker–Cova were the sole stockholders of Liberty. Interstate Court Services ("ICS") shared space on the property but was not on the lease. The lease with the option to purchase was not recorded.

In June of 2000, Lee Pelligreen ("buyer"), a real estate broker in Missouri for approximately thirty-five years, contacted sellers and spoke to Herman Wood ("Mr. Wood") regarding the availability of the property for purchase. Buyer eventually met Mr. Wood at the property. Mr. Austin gave buyer a tour of the property.

On or about July 24, 2000, buyer prepared a sale contract ("contract") for the purchase of the property. The contract was a form contract approved by "Counsel for Real Estate Board of Metropolitan St. Louis." Buyer filled in the specific provisions by typewriter. The purchase price for the property was $110,000. The closing was to take place on October 16, 2000 at U.S. Title Insurance Company.

In the section entitled "LIST OF TENANTS", buyer typed "Interstate Court Services" under the "Names of Tenants" column. Under the columns entitled "Space Occupied," "Lease Expires," "Amount of Rent," "When Due," and "Date Paid To" buyer typed "Month to

---

1. Although the case heading refers to The Liberty Program, Inc., as one corporation doing business as Interstate Court Services, the record on appeal reveals The Liberty Program, Inc. and Interstate Court Services are actually two separate corporations.

month Tenancy" and "NEW LEASE TO BE NEGOTIATED."

An addendum to the contract stated under paragraph 1:

This contract is subject to [buyer] negotiating a new Lease with present tenant of property, [ICS], within thirty (30) working days of acceptance of contract by [sellers].

Buyer delivered the contract to Mr. Wood and on July 25, 2000, sellers signed the contract, without making any changes, and returned the contract to buyer.

Less than thirty days later, buyer met with Mr. Austin and Ms. Bodecker–Cova at the property. Buyer and tenants did not enter into a lease following this meeting.

On September 1, 2000, buyer sent a letter to sellers that stated:

Per [the contract] [buyer] hereby notif[ies] [sellers] that [buyer is] waiving the contingency number one (1) per addendum to contract and will close per contract on or before October 16, 2000 at U.S. Title Company....

On September 8, 2000, sellers sent buyer a letter that stated:

This is to advise [buyer] that [sellers] are *not* waiving the contingency per addendum to the contract of July 24, 2000 regarding [the property].

Therefore, there will be no sale of [the] property at this time. This confirms what [sellers] have tried to communicate to [buyer] by telephone and in person. Should situations change, [buyer] will be contacted by [sellers].

On September 18, 2000, buyer sent another letter to sellers that stated:

... be advised that the contingency regarding a new lease with [ICS] was a contingency in favor of the [buyer] only

and [sellers] do not have an option to decline the waiver of this contingency.

Nevertheless, as [buyer has] explained to [sellers], [buyer] remain[s] willing to negotiate a lease with [ICS] upon reasonable terms. The purpose of this notice was, however, to no longer make this lease a contingency in the [contract].

[Buyer is] willing to continue working on the lease, but nevertheless expect that the [contract] will be honored and we will close as scheduled....

On October 13, 2000, sellers sent a letter to U.S. Title Company that stated the property was not being sold.

On October 16, 2000, buyer and his son Nicholas Pelligreen appeared at U.S. Title Company. Buyer was prepared to close on the property. Once buyer determined sellers would not appear at the closing he decided to assign all of his rights, title and interest in the contract to plaintiffs.

Plaintiffs brought suit against sellers and tenants. Tenants filed a counterclaim for declaratory judgment and a cross-claim against sellers for costs and attorney's fees.

On October 29, 2001, a bench trial was held. Buyer and his son, plaintiff Nick Pelligreen, testified on behalf of plaintiffs. Mr. Wood testified on behalf of sellers. Ms. Bodecker–Cova testified on behalf of tenants. Tenants' counsel also testified in regards to tenants' claim for attorney's fees. The trial court received documentary evidence from the parties.

On January 25, 2002, the trial court made findings of fact and conclusions of law and issued its judgment. The trial court, as to Count I, found that sellers were required to specifically perform the contract and convey the property to plaintiffs within forty-five days.

As to Count II, sellers were found liable to plaintiffs for the rent collected on the property from October 16, 2000 to January 31, 2001, for a total of $30,000.[2]

As to Count III, the trial court dismissed plaintiffs' claim for fraud against sellers with prejudice.

As to Count IV, the trial court granted declaratory judgment in favor of plaintiffs.

As to the counterclaim filed by tenants for declaratory judgment, first, the trial court found that the lease was a valid lease between sellers and tenants, but the option to purchase set forth therein was unenforceable against plaintiffs. Second, the trial court found that tenants' rights, as optionees under the lease were subordinate to the rights of plaintiffs under the contract. Third, the trial court found that if plaintiffs closed on the property, tenants would not be entitled to a return of the $10,000 of rent previously paid to sellers and set aside for a down payment on the property because tenants waived their option to purchase with respect to plaintiffs and under the lease the $10,000 is forfeited if the option to purchase is not exercised.

As to the cross-claim against sellers by tenants, the trial court denied with prejudice tenants' request for an award of costs and attorney's fees.

Both sellers and tenants appeal.[3] The appeals have been consolidated.

Any further relevant facts will be discussed below in relation to the specific points on appeal.

In a court-tried equity case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). *Historic Hermann, Inc. v. Thuli*, 790 S.W.2d 931, 932 (Mo.App. E.D.1990). The judgment will be affirmed unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* This court defers to the factual findings of the trial court, which is in a superior position to assess credibility. *Mullenix–St. Charles Props., L.P. v. St. Charles*, 983 S.W.2d 550, 555 (Mo.App. E.D.1998). However, this court independently evaluates the trial court's conclusions of law. *Id.*

Sellers raise three points on appeal. Tenants raise five points on appeal. We will address sellers' second point on appeal first because it is dispositive.

In their second point on appeal, sellers contend the trial court erred in finding that buyer could waive the condition precedent to negotiate a new lease with tenants in the contract for the sale of the property. Sellers contend the condition precedent was not buyer's contingency to waive because the contingency was in favor of sellers. We agree.

A condition precedent is an act or event that must be performed or occur, after the contract has been entered into, before the contract becomes effective. In Missouri, it is well-settled law that a party to a real estate contract may waive any condition in that party's favor. *Fleischer v. McCarver*, 691 S.W.2d 930, 933 (Mo.

2. We assume there was a typographical error by the trial court and the date of January 31, 2001 should have read January 31, 2002, otherwise the $30,000 figure would make no sense.

3. The trial court stayed the execution of the judgment subject to: 1) all rent on the property starting on June 1, 2002, being paid to an escrow account in plaintiffs' name; 2) rent paid on the property between October 16, 2000 and May 31, 2002 being credited to plaintiffs at closing if the trial court's judgment is affirmed or dismissed on appeal; and 3) sellers continuing to pay taxes and insurance on the property and keeping the property free from liens.

App. E.D.1985). A party to a real estate contract may waive the occurrence of a condition precedent and enforce the other party's duty to perform if the condition was included in the contract for the sole benefit and protection of the party waiving it. *Id.* (emphasis added). Whether a condition precedent is for the benefit of the buyer, or the seller, or both, must be determined under the facts and circumstances of each case and by the language of the contract entered into between the parties. *Id.* The test is whether the condition was intended by both parties to be included in the contract for the benefit of both parties, not whether the condition was in fact of a benefit to both parties. *Id.* If a condition is waived the parties are subsequently bound to perform their duties under the contract. *Howard v. Youngman,* 81 S.W.3d 101, 111 (Mo.App. E.D.2002).

■ On direct examination, buyer testified he put the "NEW LEASE TO BE NEGOTIATED" language in the contract because "Mr. Wood at the time said that he would like me to talk to the present people occupying the building and see if I could work out a rental agreement with them." Buyer testified that "[Mr. Wood] just thought that he'd like to keep [Mr. Austin] in the building. if he could" when asked why Mr. Wood wanted buyer to negotiate a contract with tenants. Also, buyer stated that he added paragraph 1 of the addendum to the contract "because Mr. Wood asked me to."

On cross-examination by sellers, buyer stated "there was an addendum to the contract number one that Mr. Wood asked me to negotiate … a new lease with [ICS]." Buyer stated "[Mr. Wood] wanted me to put that addendum number one in the contract" and "[Mr. Wood] wanted me to see what I could work out with [ICS]." However, when asked about buyer's waiv-

er of the condition precedent buyer stated "it's my contingency in the contract." Buyer denied that sellers stated that buyer had to have a lease with tenants before the property would be sold.

On cross-examination by tenants, the following exchange occurred:

[Tenants' counsel]: If you wanted the property, you had thirty days to negotiate a lease; didn't you?

[Buyer]: Yes.

[Tenants' counsel]: That was a contingency in the contract?

[Buyer]: The contingency favored me.

[Tenants' counsel]: I don't say who favored. It was in the contract, right?

[Buyer]: Yes.

Mr. Wood also testified about his conversations with buyer regarding his desire to have tenants continue to occupy the property. Mr. Wood stated:

[Buyer] said he was interested in buying the property. I asked him first of all what he planned to do with it. Was he planning on continuing to have that building occupied, tear it down. [Buyer] said he would continue. I told him well, we couldn't really do anything without satisfying those [tenants] that were in there. I told him [during our first conversation] and [in] greater detail later that was a business that my wife and I put heart and soul into it for a lot of years. We sold it to two of the people who were employees [Mr. Austin and Ms. Bodecker–Cova]. And we had an obligation, we felt, to them and wouldn't do anything to that building without [tenants] okaying it.

Mr. Wood testified that he told buyer that sellers would not sign any contract "that did not have a contingency clause in [it] that [buyer] get together with [tenants] and come up with an agreement with them." Mr. Wood confirmed that he had

asked buyer to put paragraph 1 of the addendum in the contract.

Under its conclusions of law the trial court found the following:

13. The [c]ontract is legally valid, binding and specifically enforceable.

14. The condition precedent [in the addendum requiring buyer to negotiate a new lease with tenants] was for the benefit of both [sellers and buyer].

15. [Buyer] attempted to satisfy the condition precedent but [tenants] refused to negotiate and enter into a new lease. [Buyer] then waived the contingency.

These conclusions of law are in error because they are against the weight of the evidence and misapply the law.

The facts and circumstances of this case and the language of contract clearly show the condition precedent, which was contained in paragraph 1 of the addendum, was included in the contract for the sole benefit of sellers. Buyer admitted a number of times during his testimony that the condition precedent was included in the contract at the request of Mr. Wood. Mr. Wood explained during his testimony why the condition precedent was requested and why he felt it was important to keep his former employees on the property. The condition precedent was clearly not intended by both buyers and sellers to be included in the contract for both parties' benefit. Therefore, the trial court's conclusion of law that the condition precedent was for the benefit of both buyer and sellers was incorrect. ·

Because the condition precedent was included in the contract for the sole benefit of sellers, buyer could not waive the condition precedent. Buyer attempted to waive the condition precedent in the letter he sent to sellers on September 1, 2000.

Buyer also attempted to espouse a mistaken legal conclusion that the contingency was in his favor through his testimony and his letter to sellers on September 18, 2000. However, buyer admitted Mr. Wood requested that paragraph 1 of the addendum be included in the contract. As stated above, the condition precedent was for the sole benefit of sellers and it was their contingency to waive. Therefore, the trial court's conclusion of law that buyer waived the condition precedent after he attempted to satisfy it is in conflict with well-settled Missouri law. Buyer could not waive the condition because it was not in his favor.

Sellers never waived the condition precedent. Sellers accepted the contract when it was signed on July 25, 2000. The condition precedent went unfulfilled within the thirty-day time period after July 25, 2000. Obviously, buyer knew he had not fulfilled the condition precedent because he sent a letter to sellers on September 1, 2000, which attempted to waive the condition precedent. If buyer believed the condition precedent had been fulfilled, he would not have attempted to waive the condition but proceeded to closing confident that the contract would be performed. In his letter of September 1, 2000, buyer gave no reason for the waiver of the condition precedent nor did he detail the conduct of any persons frustrating the fulfillment of the condition; instead, he proceeded under the mistaken assumption that the condition precedent was his to waive. Sellers, by their letter of September 8, 2000, stated in no uncertain terms that they were not waiving the condition precedent. Since the sellers did not waive the condition precedent and buyer failed to fulfill the condition precedent, the contract never became effective. *See Historic Hermann, Inc.*, 790 S.W.2d at 936. Thus, sellers were not bound to close on the property on October 16, 2000, because the

condition precedent was not waived by them or fulfilled by buyer.

 Specific performance is available only where a valid contract is in existence between the parties. *Grease Monkey Intern., Inc. v. Godat*, 916 S.W.2d 257, 260 (Mo.App. E.D.1995). If a condition precedent is not met there is no valid contract for the trial court to specifically enforce. *See id.*

In this case, because the condition precedent was not met, the trial court erred in finding the contract was specifically enforceable in paragraph thirteen of its conclusions of law. Furthermore, the trial court's judgment, based on its erroneous conclusions of law, was in error because it found in favor of plaintiffs as to Count I and required sellers to specifically perform the contract and convey the property to plaintiffs. Because buyer failed to fulfill the condition precedent there was no valid contract for the trial court to enforce. Seller's second point is granted and the trial court's judgment as to Count I is reversed.

Because the trial court's judgment as to Count II, Count IV and the counterclaim filed by tenants relies on the finding that the contract was subject to specific performance, we reverse and remand with directions to the trial court to enter judgment as to Count II, Count IV and the counterclaim, consistent with this opinion.

As for the cross-claim filed by tenants against sellers, tenants did not raise on appeal the trial court's denial with prejudice of tenants' request for costs and attorney's fees. Although tenants asked this court to find that they were entitled to an award of legal fees from sellers in the conclusion of their appellant brief, none of their five points relied on specifically challenged the trial court's ruling on the cross-claim. An argument not set out in the point relied on but merely referred to in the brief does not comply with the requirements of Rule 84.04(d) and this court considers the argument abandoned. *Brizendine v. Conrad,* 71 S.W.3d 587, 593 (Mo. banc 2002); Rule 84.04(d).

Based on the foregoing, we reverse the judgment of the trial court as to Count I and reverse and remand as to Count II, Count IV, and the counterclaim in order for a judgment to be entered consistent with this opinion.

PAUL J. SIMON, P.J. and SHERRI B. SULLIVAN, J., concur.