

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

TERI A. DEFFENBAUGH )
and KELLY R. FORCK, )
                         )
      **Appellants,** )
                         )
v.                       )    **WD86760**
                         )
DAVID KELLY BURRE, TRUSTEE )    **Filed:  January 21, 2025**
OF THE DAVID KELLY BURRE )
REVOCABLE TRUST, )
                         )
      **Respondent.** )

### Appeal from the Circuit Court of Callaway County
### The Honorable Kevin Crane, Judge

### Before Special Division: Alok Ahuja, P.J., and
### Mark D. Pfeiffer and W. Douglas Thomson, JJ.

Teri Deffenbaugh and Kelly Forck (collectively "Deffenbaugh") filed suit in

the Circuit Court of Callaway County against David Kelly Burre, as Trustee of the

David Kelly Burre Revocable Trust.  The lawsuit sought specific performance of a

contract to purchase real estate from the Trust.  Following a bench trial, the

circuit court denied specific performance, and awarded Burre his attorney's fees

pursuant to a fee-shifting provision in the parties' contract.  Deffenbaugh

appeals, contending that the circuit court's judgment was unsupported by

substantial evidence, was against the weight of the evidence, and erroneously

applied the law. We affirm. We grant Burre's motion for attorney's fees on appeal, and remand to the circuit court to calculate the amount of Burre's recoverable fees.

## Factual Background

On July 10, 2016, Deffenbaugh and Forck entered into a contract with Burre, in his capacity as Trustee of the David Kelly Burre Revocable Trust, to purchase real property owned by the Trust in Callaway County. Because the issues raised on appeal do not require us to distinguish between Burre and his revocable trust, we refer to Burre and the Trust collectively as "Burre" in the remainder of this opinion.

The contract described the property to be sold (the "Property") as:

20 acres m/l ["more or less"] of real estate located Section 18, Township 44N, Range 10 West in Callaway County, Missouri. See attached map, property corners marked with steel posts.

The contract specified a purchase price of $90,000. Deffenbaugh made an earnest money deposit of $5,000, which was held in escrow by Boyd & Boyd Title Company.

The Property was located in the southeast portion of a larger parcel of property owned by Burre. Prior to executing the contract, the parties walked Burre's property and marked the interior corners of the Property with steel posts. The parties intended that the eastern boundary of the Property would be a neighboring property known as the "Quarry Property," while part of the southern boundary of the Property would be the right of way of the Katy Trail.

Although the contract's description of the Property refers to an "attached map," the parties were unable to produce a copy of that map at trial.

2

The contract specified that Burre was "to pay for a survey" of the Property. Although the contract only expressly required Burre to "pay for" a survey, the parties agree that he was contractually obligated both to arrange, and pay, for the survey needed to obtain a legal description. The contract also required Burre to provide a commitment for title insurance to Deffenbaugh "within a reasonable time, prior to closing." At closing, Burre was required to deliver a General Warranty Deed to Deffenbaugh, free and clear of all liens and encumbrances.

The Property was landlocked, with no direct access to any public roadway. While Deffenbaugh would need some means of accessing the Property, Burre was unwilling to provide an easement across his other property, and was concerned that Deffenbaugh would assert a right to an easement by necessity across Burre's remaining property. To avoid this eventuality, the contract specified: "This contract contingent on Buyer obtaining clear title to property between Katy Trail and subject property, and an easement [over the Quarry Property] on existing roadway from Seller's gate to Katy Trail right of way."

The contract provided that, "[i]n the event the parties to this agreement pursue litigation for breach of the agreement, the non-prevailing party shall be liable to pay all costs of the prevailing party . . ., including but not limited to, court costs, filing fees and attorney fees."

The original closing date specified in the contract was December 15, 2016. On December 14, 2016, the parties executed an addendum extending the closing date to July 19, 2017. The addendum specified that time was of the essence.

3

In March 2017, Burre hired Surveyor[1] to survey the Property. Burre provided Surveyor with two different handwritten drawings that Burre had made to illustrate the general location of the Property. Surveyor used the steel posts placed by the parties to identify the interior boundaries of the Property. Surveyor was initially unable to locate a steel post on the northwestern corner of the Property, and consequently excluded that marker from one of his early drawings; Burre later supplied Surveyor with information to locate the missing post.

Surveyor testified in his deposition that he stopped working on his survey of the Property in May 2017, without completing a definitive survey, because the parties appeared to be on "hiatus." Surveyor's testimony was unclear as to *which party* requested that he pause his work. As a result of Surveyor's suspending his survey work, Burre did not acquire a survey of the property prior to the scheduled closing on July 19, 2017. Although Deffenbaugh contended that Surveyor stopped working at Burre's instruction, the circuit court's judgment found that the reason the survey was not completed was "not because [Burre] terminated the employment of [Surveyor] or directed him to cease work."

For his part, as of July 19, 2017, Deffenbaugh had not obtained any written, legally enforceable easement or title to property necessary to gain access to the Property from a public roadway. Deffenbaugh testified that the owner of the Quarry Property had told Deffenbaugh, prior to the July 2017 closing date, that he would give Deffenbaugh permission to travel across the Quarry Property to access the Property. Despite this alleged oral agreement, the circuit court found that Deffenbaugh "had not obtained title to any of the Quarry Property, an

---

[1]     Pursuant to § 509.520.1(5), RSMo, we do not provide the names of any non-party witnesses in this opinion.

easement, or anything in writing" prior to July 19, 2017. The circuit court also found that, prior to the closing date, Deffenbaugh had not informed Burre of any oral agreement with the Quarry Property's owner.

No closing occurred on July 19, 2017. Although the parties continued to communicate concerning a possible sale of the Property, they did not execute any document extending the closing date under the existing contract. While Deffenbaugh claimed that the existing contract remained in effect, the circuit court credited Burre's testimony that the contract expired on July 19, 2017, and that after that date, "the parties were discussing a new agreement" which would need to be agreed to "and memorialized in writing."

In April 2019, Deffenbaugh purchased a portion of the Quarry Property, which would provide access to the Property without the necessity of any further easements or property acquisition. Around the same time, Surveyor completed a survey, paid for by Deffenbaugh, which defined the boundaries of the Property.

On October 2, 2019, an attorney for Deffenbaugh wrote a letter to Burre, threatening to sue if Burre did not convey the Property to Deffenbaugh. Burre refused, contending that the July 2016 contract had long since expired.

Deffenbaugh sued Burre for specific performance in the Circuit Court of Callaway County on August 5, 2020. In his Answer, Burre asserted a counterclaim seeking a declaration that the July 2016 contract was no longer enforceable, and an award of Burre's attorney's fees defending against Deffenbaugh's efforts to enforce the contract.

The circuit court held a bench trial on September 13, 2023. The court entered its judgment on October 18, 2023. The judgment denied Deffenbaugh's

claim for specific performance of the July 2016 contract, and awarded Burre $15,000 in attorney's fees (an amount to which the parties had stipulated).

The circuit court rejected Deffenbaugh's specific performance claim on multiple grounds. First, the court found that the description of the Property in the July 2016 contract was not sufficiently definite to be enforced. The circuit court also found that Deffenbaugh had failed to prove that he had performed, and tendered performance of, his obligations under the contract. The court emphasized that

> [i]t is undisputed that, [as of July 19, 2017], [Deffenbaugh] had not satisfied an express contingency because [he] had not obtained "clear title" or an "easement" to any portion of the Quarry Property. An undefined, alleged oral offer to allow access by the owner of the Quarry Property, even if the Court were to believe one existed, does not constitu[t]e clear title or an easement. "A party suing for breach of contract must allege and prove performance of all conditions precedent, or he must prove an excuse for their nonperformance." In this case, [Deffenbaugh] did neither. "If a condition precedent is not met there is no valid contract for the trial court to specifically enforce."

(Citations omitted). The circuit court rejected Deffenbaugh's claim that he could waive the clear title/easement contingency, finding that the contingency was intended for Burre's benefit, and therefore could not be waived by Deffenbaugh alone. Even if the clear title/easement contingency were waivable, the judgment found that Deffenbaugh "offered no evidence of an attempt, either express or implied, to waive the contingency."

Finally, the circuit court rejected Deffenbaugh's contention that the contract remained in existence despite the passage of the July 19, 2017 closing date. The court noted that the December 2016 addendum expressly provided

6

that time was of the essence, and that the parties had not executed any further written extension of the closing date.

Deffenbaugh appeals.

## Standard of Review

In civil cases tried to the court, "the judgment of the trial court will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. 2012) (citation omitted).

> A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations. A court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong.

*Id.* (citation omitted).

"A claim that the judgment erroneously declares or applies the law, on the other hand, involves review of the propriety of the trial court's construction and application of the law. . . . This Court applies *de novo* review to questions of law decided in court-tried cases." *Id.* (citations omitted). Importantly for purposes of this appeal, the "interpretation of a contract is a question of law" which we review *de novo*. *Knob Noster R-VIII Sch. Dist. v. Dankenbring*, 220 S.W.3d 809, 816 (Mo. App. W.D. 2007).

## Discussion

Deffenbaugh raises eleven separate Points Relied On, claiming that the circuit court erroneously applied the law, lacked substantial evidence for its factual findings, or made findings which were against the weight of the evidence.

We resolve this appeal primarily based on a single issue: that the circuit court had substantial evidence to find that Deffenbaugh had not performed, or tendered performance of, his obligations under the contract as of the July 19, 2017 closing date.

> Specific performance is purely an equitable remedy and must be governed by equitable principles. "The equitable remedy of specific performance is not a matter of right but is a remedy applied by courts of equity, depending upon the facts in the particular case; and the trial court has judicial discretion within the established doctrines and principles of equity to award or withhold the remedy.". . .
>
> . . . .
>
> "[P]roof of performance or tender of performance is necessary to the recovery upon an express contract[.]" "The party seeking specific performance must prove by clear and convincing evidence that he or she has performed, or tendered performance of, his or her portion of the contract." "A 'tender' is an offer to perform a contract with the present ability to do so, and comprehends a readiness and willingness to perform." "A mere announcement of readiness to settle the transaction, a premature offer to perform, or an offer to close a real estate contract, is not a sufficient tender."

*ROH Farms, LLC v. Cook*, 572 S.W.3d 121, 125-26 (Mo. App. W.D. 2019) (citations omitted).

The contract expressly provided that it was contingent on Deffenbaugh obtaining clear title to, and an easement over, the property of third parties in order to provide access to the otherwise-landlocked Property. The contract stated:

> This contract contingent on Buyer obtaining clear title to property between Katy Trail and subject property, and an easement [over the Quarry Property] on existing roadway from Seller's gate to Katy Trail right of way.

8

It is undisputed that Deffenbaugh had not obtained "clear title" to property between the Katy Trail and the Property, or an easement over the Quarry Property, as of the July 19, 2017 closing date. While Deffenbaugh testified at trial that he had an oral understanding with the owner of the Quarry Property that Deffenbaugh could traverse the Quarry Property to access the Property, he did not have any legally enforceable, written easement agreement or property conveyance. The circuit court concluded that any oral agreement which Deffenbaugh purportedly had with the owner of the Quarry Property was insufficient to satisfy the express contingency in the July 2016 contract. The court explained that "[a]n undefined, alleged oral offer to allow access by the owner of the Quarry Property, even if the Court were to believe one existed, does not constitu[t]e clear title or an easement." Because the clear title/easement contingency had not been satisfied, the circuit court concluded that specific performance was unwarranted: "[i]f a condition precedent is not met there is no valid contract for the trial court to specifically enforce."

Deffenbaugh does not seriously challenge the circuit court's conclusion that he failed to satisfy the express condition that he "obtain[ ] clear title . . . and an easement" necessary to provide access rights to the Property on or before July 19, 2017. Generally, an oral agreement for the purchase of an interest in real estate is unenforceable. Missouri's statute of frauds provides in relevant part that "[n]o action shall be brought . . . upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged . . . ."

9

§ 432.010, RSMo. The requirement of a writing may be excused in limited circumstances "'to prevent a gross injustice or deep-seated wrong to one of the contracting parties.'" *Piazza v. Combs*, 226 S.W.3d 211, 223 (Mo. App. W.D. 2007) (quoting *Jones v. Linder*, 247 S.W.2d 817, 819 (Mo. 1952)). Deffenbaugh does not argue, however, that any such circumstances existed in this case. And at oral argument, Deffenbaugh's counsel conceded that he had likely not satisfied the clear title/easement condition, as a legal matter, prior to the July 19, 2017 closing date.

At certain points in his Brief, Deffenbaugh contends that he could unilaterally waive the access-rights condition. The circuit court found, however, that

> [t]he express contingency for title and an easement to a portion of the Quarry Property was expressly negotiated and written into the Contract by [Burre], a licensed real estate agent, because if [Deffenbaugh] did not obtain the same, [his] land would be landlocked, which could lead to an easement by necessity claim against [Burre] for access across his remaining land, which he was not willing to give.

Deffenbaugh would only have the unilateral ability to waive the access-rights condition "if the condition was included in the contract for [his] sole benefit and protection." *Pelligreen v. Wood*, 111 S.W.3d 446, 451 (Mo. App. E.D. 2003) (quoting *Fleischer v. McCarver*, 691 S.W.2d 930, 933 (Mo. App. E.D. 1985)). Given the circuit court's unchallenged factual finding that the clear title/easement condition was intend to protect *Burre*, Deffenbaugh could not unilaterally relieve himself of the obligation to obtain access rights across other property.

10

Deffenbaugh argues that his obligation to obtain access rights was excused, because Burre had failed to obtain a survey of the property. Deffenbaugh points out that the survey was necessary to develop a legal description of the property, that a legal description was necessary before a warranty deed could be prepared, and therefore the completed survey was required before any closing could occur.

Burre does not dispute that he had an obligation to obtain a survey of the property prior to the closing date; nor does he dispute that he did not acquire such a survey prior to July 19, 2017. But the fact that *both parties* may have failed to satisfy their contractual obligations would not have the effect of excusing *only Deffenbaugh's* non-performance. Instead, the parties' joint failure to fulfill the contract's conditions, as of the date required for their mutual performance, would discharge *both parties*.

> As the Restatement instructs, agreements concerning an exchange of promises require performance to be exchanged simultaneously whenever possible, unless the agreement indicates otherwise. Restatement (Second) of Contracts § 238 (1981). This simultaneous exchange of performances creates concurrent conditions, under which performance by one party creates a condition precedent for performance by the other party. *Id.* § 238 cmt. a.
>
> . . . .
>
> In a contract with concurrent conditions, a party is not required to perform until the other party makes a valid offer to perform. Restatement (Second) of Contracts § 238 cmt. a. (1981). If no party performs, neither party is in default, nor liable for breach. *Id.* Thus, a claimant alleging breach of a contract that contains concurrent conditions must at least show that he or she offered to perform, and that the other party defaulted. *Id.* The Restatement further instructs that a valid offer to perform "must be made with the manifested present ability to make it good, but the offeror need not go so far as actually to hold out that which he is to deliver." *Id.*

11

However, "[w]hen it is too late for either to make such an offer, both parties are discharged by the non-occurrence of a condition." *Id.*

*Addie v. Kjaer*, 737 F.3d 854, 862 (3d Cir. 2013) (applying Virgin Islands law).

As explained by another court:

> [T]he failure of both parties to perform concurrent conditions does not leave the contract open for an indefinite period so that either party can tender performance at his leisure. The failure of both parties to perform concurrent conditions during the time for performance results in a discharge of both parties' duty to perform. Thus, where the parties have made time the essence of the contract, at the expiration of time without tender by either party, both parties are discharged. (3A Corbin on Contracts (1960) § 663, p. 181.) . . . Neither party can hold the other in default and no cause of action to enforce the contract arises.

*Pittman v. Canham*, 3 Cal. Rptr.2d 340, 342 (App. 1992).

Notably, Deffenbaugh does not contend that Burre's failure to obtain a survey prevented Deffenbaugh from acquiring the necessary access rights. Instead, in his Reply Brief Deffenbaugh acknowledges that he *could have* obtained the necessary access rights even without a survey; he merely claims that, as a legal matter, his obligation to obtain the required access rights was not triggered until Burre had obtained a survey:

> It is not that Appellants could not obtain an easement or clear title to the neighboring property without Respondent's survey, it is that their obligation to obtain the easement or clear title to the neighboring property was not triggered until Respondent provided the survey of the property that was to be sold by Respondent to Appellants.

To avoid the circuit court's holding that Deffenbaugh was not entitled to specific performance because he had not acquired access rights, Deffenbaugh invokes the "first to breach" rule:

Missouri does adhere to the "first to breach" rule, which holds that a party to a contract cannot claim its benefit where he is the first to violate it. That determination of the first to breach does not end the analysis, however, as only a material breach may excuse the other party's performance. . . . In cases involving breach of a promise, the proper remedy depends on whether the breach was material. . . . If the breach is not material, the aggrieved party may sue for partial breach but may not cancel.

*R.J.S. Security, Inc. v. Command Security Servs., Inc.*, 101 S.W.3d 1, 18 (Mo. App. W.D. 2003) (citations omitted). In his argument concerning the "first to breach" rule, Deffenbaugh highlights not only Burre's failure to obtain a survey of the Property, but also Burre's failure to obtain a commitment for title insurance, despite the contract's requirement that Burre provide Deffenbaugh with a title commitment "within a reasonable time, prior to closing."

We will not address Deffenbaugh's reliance on the "first to breach" rule, however, because he never invoked that doctrine in the circuit court to excuse his failure to timely acquire the required access rights. In particular, Deffenbaugh never argued in the circuit court that Burre's failure to provide him with a survey, or with a title commitment, excused his failure to obtain the required access rights. Although Burre's counterclaim contended that Deffenbaugh had failed to comply with the conditions precedent in the contract prior to the July 2017 closing date, Deffenbaugh did not invoke the "first to breach" doctrine in his answer to the counterclaim, to excuse his failure to obtain enforceable access rights. The parties filed proposed judgments with the circuit court after trial, in lieu of closing arguments. In his proposed judgment, Deffenbaugh did not invoke the "first to breach" doctrine to excuse his failure to acquire the necessary access rights. Instead, Deffenbaugh's proposed judgment asked the circuit court to conclude: (1) that Deffenbaugh's oral agreement with the Quarry Property's

13

owner satisfied the clear title/easement requirement; (2) that Deffenbaugh acquired the necessary access rights in April 2019, at a time when the July 2016 contract purportedly remained in effect; and (3) that Deffenbaugh had unilaterally waived the contingency that he obtain access rights over third-party property.

"The circuit court cannot have erred in denying a claim that was never presented to it, and this Court 'will not convict the [circuit] court of error on an issue which was never before it to decide.'" *Int. of E.G.*, 683 S.W.3d 261, 266 (Mo. 2024) (quoting *Brizendine v. Conrad*, 71 S.W.3d 587, 593 (Mo. 2002)). Because Deffenbaugh never raised the "first to breach" doctrine in the circuit court, we do not further discuss it.

In his eighth Point, Deffenbaugh argues that he could satisfy the access rights condition after the July 19, 2017 closing date specified in the contract, because § 516.110(1), RSMo provides a ten-year statute of limitations for "[a]n action upon any writing . . . for the payment of money or property." This argument is meritless. While § 516.110(1) may specify *when a party may sue* over a breach of a real-estate contract, the statute does not purport to substantively alter the terms of the contract itself, or extend the duration of contracts beyond the period to which the parties agreed. In this case, the addendum to the parties' contract provided that the closing was to occur on July 19, 2017, and also explicitly provided that time was of the essence to the agreement. A clause specifying that time is of the essence means that "a specific contractual provision fixing the time of performance is to be regarded as a vital element of the contract. If a contract specifies a certain time for performance, the

contract must be performed at that time." *Miceli v. Dierberg*, 773 S.W.2d 154, 156 (Mo. App. E.D. 1989) (citations omitted). Although the parties engaged in further discussions concerning a potential property sale, the circuit court found, and Deffenbaugh's counsel acknowledged at argument, that the parties never entered into a formal agreement to extend the closing date beyond July 19, 2017. Deffenbaugh was required to fulfill his contractual obligations prior to the expiration of the contract on July 19, 2017.

In his ninth Point, Deffenbaugh contends that the circuit court erred in awarding attorney's fees to Burre. Deffenbaugh's attorney's fee argument depends on his underlying assertion that Burre was the first to materially breach the contract, a contention we have rejected above.

What we have said makes it unnecessary to address Deffenbaugh's other claims.

Both parties filed motions to recover their attorney's fees on appeal. The parties' contract provides that, "[i]n the event the parties to this agreement pursue litigation for breach of the agreement, the non-prevailing party shall be liable to pay all costs of the prevailing party . . ., including but not limited to, court costs, filing fees and attorney fees." Burre was awarded his attorney's fees for litigation in the circuit court under this contract provision, and the provision is broad enough to include the attorney's fees he incurred defending the circuit court's judgment on appeal. *See, e.g.*, *Brown v. Jernigan*, 700 S.W.3d 343, 351 (Mo. App. S.D. 2024); *Dash v. Mitchell*, 663 S.W.3d 859, 868 (Mo. App. E.D. 2023).

Because Burre was the prevailing party on appeal, we grant his motion for attorney's fees, and deny Deffenbaugh's counter-motion. "'While appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested.'" *Alhalabi v. Mo. Dep't. of Corr.*, 662 S.W.3d 180, 197 (Mo. App. W.D. 2023) (citing *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. 2013)). Accordingly, the case is remanded to the circuit court for it to determine an appropriate attorney's fee award.

## Conclusion

The judgment of the circuit court is affirmed, and the case is remanded to the circuit court to award Burre his reasonable attorney's fees for this appeal.

_____
Alok Ahuja, Judge

All concur.

16